## STATE OF CONNECTICUT *v.* AARON LITTLES
## (10407)

DUPONT, C. J., LAVERY and FREEDMAN, Js.

Argued January 6—decision released April 20, 1993

*Lisa R. Stevens,* deputy assistant public defender, with whom, on the brief, was *Joseph G. Bruckmann,* public defender, for the appellant (defendant).

*James M. Ralls III,* assistant state's attorney, with whom, on the brief, were *Eugene Callahan,* state's attorney, and *James Bernardi,* assistant state's attorney, for the appellee (state).

LAVERY, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of larceny in the second degree in violation of General Statutes § 53a-123 (a) (3),[1] and robbery in the second degree in violation of General Statutes § 53a-135 (a) (1).[2] The defendant was found guilty of these crimes as an accessory in accordance with General Statutes § 53a-8.[3] On appeal, the defendant claims that his conviction should be reversed because (1) the evidence was not sufficient for the jury to find him guilty of larceny in the second

[1] General Statutes § 53a-123 (a) provides in pertinent part: "A person is guilty of larceny in the second degree when he commits larceny as defined in section 53a-119 and . . . (3) the property, regardless of its nature or value, is taken from the person of another . . . ."

General Statutes § 53a-119 provides in pertinent part: "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. . . ."

[2] General Statutes § 53a-135 provides in pertinent part: "(a) A person is guilty of robbery in the second degree when he commits robbery as defined in section 53a-133 and (1) he is aided by another person actually present . . . ."

General Statutes § 53a-133 provides in pertinent part: "ROBBERY DEFINED. A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of . . . (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny."

[3] General Statutes § 53a-8 (a) provides: "A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

degree and robbery in the second degree, and (2) his conviction of both robbery in the second degree and larceny in the second degree violated the principle of double jeopardy. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. On January 6, 1991, some time before 12:30 a.m., the victim was walking alone on Ely Avenue near the train station in South Norwalk. As the victim was walking, he noticed a car with its lights off near the entrance to the railroad station parking lot.

As the victim walked by the lot entrance, the car backed up and stopped about fifteen yards away from the victim, facing him. Two men got out of the car, walked toward the victim and told him to "come here." The victim knew that normally no one was in the area at that time of night, and was fearful that he would not be able to get away. The first man asked him if he had any money. The victim replied that he had $3. The man then told the victim to open his coat, and ordered him to take it off slowly and hand it over. After the victim handed over his coat, the man told him to take off his hat, and the victim also handed that to him. The second man then told the victim to take off his necklace and hand it over. The victim complied. Then the first man told the victim to run. As he ran, the victim heard two gunshots behind him.

Police officers saw two men running toward a car that had a driver at the wheel and its lights off. The officers then noticed the victim and saw that he was not wearing a coat on that cold January night. The victim told the police officers that he had just been "stuck up," and he then pointed toward the moving car. The officers followed the car and stopped it. Three men, including the defendant, who was driving, got out of the vehicle. Although each occupant was wearing a

coat, there was a fourth coat on the floor near the back-seat. None of the suspects gave a definite answer as to who owned the coat. An inventory search of the vehicle revealed the victim's hat in the back and the necklace in the ashtray.

Although the defendant did not testify, his oral statement at the police department was recounted for the jury. The defendant claimed that he was at the train station "looking for girls" when his friends got out to go to the bathroom. A short time later, they came running back to the car and he drove away. The defendant claimed to be unaware that a robbery had occurred.

## I

The defendant first claims that the evidence presented at trial was insufficient to support his conviction for larceny in the second degree. Specifically, the defendant asserts that the state did not prove beyond a reasonable doubt that he had committed a larceny "from the person of another" as required by the larceny statute, and that the state failed to prove that he actively participated in the larceny. We disagree.

"When a claim on appeal challenges the sufficiency of the evidence, we undertake a two part test. We first review the evidence presented at trial, construing it in the light most favorable to sustaining the jury's verdict. We then determine whether, upon the facts thus established and the inferences reasonably drawn therefrom, the jury could reasonably have concluded that the cumulative effect of the evidence established guilt beyond a reasonable doubt." *State* v. *Allen,* 28 Conn. App. 81, 88, 611 A.2d 886, cert. denied, 223 Conn. 920, 614 A.2d 826 (1992); *State* v. *Simino,* 200 Conn. 113, 116, 509 A.2d 1039 (1986). Evidence is sufficient to sustain a verdict if the jury could reasonably have concluded, on the facts established and the reasonable inferences drawn therefrom, that the defendant's guilt

was proven beyond a reasonable doubt. *State* v. *Stankowski,* 184 Conn. 121, 126, 439 A.2d 918, cert. denied, 454 U.S. 1052, 102 S. Ct. 596, 70 L. Ed. 2d 588 (1981).

We consider first the defendant's claim that the state failed to prove that a larceny occurred "from the person of another." Conviction for second degree larceny under General Statutes § 53a-123 (a) (3) requires that "property, regardless of its nature or value is taken from the person of another."

To support his first claim, the defendant cites a line of cases holding that, in order for larceny in the second degree to have occurred, there had to have been a trespass to the person of the victim. In *State* v. *Crowe,* 174 Conn. 129, 134, 384 A.2d 340 (1977), our Supreme Court, after noting a divergence among authorities on what constitutes a taking from the person, held: "In our view, larceny from the person requires an actual trespass to the person of the victim. Because of the trespass to the person, the offense is a serious crime in itself so that the value of the property stolen does not enter into the magnitude of the crime. On the other hand, the removal of property from the presence or control of the victim lacks such a trespass and is insufficient to constitute larceny from the person. We are, therefore, in accord with the rule that larceny from the person is a separate and distinct offense from that of simple larceny." In *Crowe,* the defendants forced a service station attendant, at gunpoint, into a backroom of the station, and then stole a money bag and the attendant's car. Our Supreme Court reasoned that larceny in the second degree had not occurred because the money and car keys were not taken from the person of the attendant. Likewise, in *In re Juvenile Appeal (84-4),* 1 Conn. App. 642, 474 A.2d 485 (1984), we held

that when a radio was taken from near the victim while the victim was held at knifepoint, there was no taking from the person as required by the statute.

The facts here clearly distinguish this case from *State v. Crowe,* supra, and *In re Juvenile Appeal (84-4),* supra. In this case, the victim was walking near a dark parking lot at night when he encountered two men who asked him if he had any money. The men then asked the victim to hand over certain personal items. Although the defendant's companions did not physically remove the items from the victim's person, they compelled him, by implicit threat, to hand them over. The victim was wearing the items just prior to his handing them over. The items did not come from the area near the victim, but from his person. Since the stolen property was taken from the person of the victim, the statutory requirement was met.

The state presented ample evidence at trial to demonstrate that the victim handed over items from his person when he felt compelled to do so by the defendant's companions. The jury therefore could reasonably have found the defendant guilty beyond a reasonable doubt of larceny in the second degree.

As part of his first claim, the defendant further asserts that the state did not present sufficient evidence of accessorial liability with regard to the larceny. General Statutes § 53a-8 provides in relevant part that "[a] person, acting with the mental state required for commission of an offense, who . . . intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct . . . as if he were the principal offender." It is necessary that a defendant have the mental state required for the commission of a crime while intentionally aiding another. "Mere presence as an inactive companion, passive acquiescence, or the doing of innocent acts

which may in fact aid the one who commits the crime must be distinguished from the criminal intent and community of unlawful purpose shared by one who knowingly and wilfully assists the perpetrator of the offense in the acts which prepare for, facilitate, consummate it." *State* v. *Crump,* 201 Conn. 489, 494, 518 A.2d 378 (1986). In the present case, there was sufficient evidence, together with the reasonable inferences drawn therefrom, for the jury to find that the defendant was more than a mere inactive companion.

The evidence presented at trial showed that the defendant drove a car in which his companions were passengers to a deserted railroad station parking lot at approximately 12:30 a.m. When the victim first saw the vehicle, the defendant was behind the wheel and it was parked with its lights off. As the victim neared the lot entrance, the defendant backed up the car and parked facing the victim who was fifteen yards away. The defendant's two companions got out of the vehicle, approached the victim, and stole the victim's coat, hat and necklace. The police officers testified that they saw two men returning to the vehicle. They pursued the vehicle and stopped it. The defendant was driving. The defendant's control of the car before, during and after the holdup is consistent with an inference that the defendant was acting as wheelman, and was more than a passive observer of the criminal scene. See *State* v. *Grant,* 219 Conn. 596, 594 A.2d 459 (1991); *State* v. *Findlay,* 198 Conn. 328, 502 A.2d 921, cert. denied, 476 U.S. 1159, 106 S. Ct. 2279, 90 L. Ed. 2d 721 (1986); *State* v. *Vincent,* 194 Conn. 198, 479 A.2d 237 (1984); *State* v. *Maltese,* 189 Conn. 337, 455 A.2d 1326 (1983); *State* v. *Castillo,* 11 Conn. App. 621, 528 A.2d 860, cert. denied, 205 Conn. 804, 531 A.2d 938 (1987). The defendant's claim that there was insufficient evidence that he actively participated in the larceny therefore must fail.

## II

The defendant's second claim is that the evidence was insufficient to support a conviction for robbery in the second degree under General Statutes § 53a-135 (a) (1). Robbery occurs when a person, in the course of committing a larceny, uses or threatens the immediate use of physical force upon the victim. General Statutes § 53a-133. The defendant contends that there was insufficient evidence of a threat to constitute robbery. While there is no definition of the word "threaten" in the statutes, General Statutes § 1-1 (a)[4] provides that the commonly approved usage of the language should control. *State* v. *Newton,* 8 Conn. App. 528, 541, 513 A.2d 1261 (1986). A threat is "1. an indication of something impending and usually undesirable or unpleasant . . . 2. something that by its very nature or relation to another threatens the welfare of the latter." Webster, Third New International Dictionary; see *State* v. *Newton,* supra. A threat has also been defined as "any menace of such a nature and extent as to unsettle the mind of the person on whom it operates, and to take away from his acts that free and voluntary action alone constitutes consent." Black's Law Dictionary (4th Ed.); *Hadley* v. *State,* 575 So. 2d 145, 156 (Ala. Cr. App. 1991); *State* v. *Hamre,* 247 Or. 359, 362, 429 P.2d 804 (1967). This definition does not require that a threat be explicitly uttered.

In the present case, there was an implied threat. An implied threat is as effective as a stated threat, especially when the apparent ability to carry out the threat is overwhelming. *State* v. *Rusk,* 289 Md. 230, 246, 424

---

[4] General Statutes § 1-1 (a) provides: "In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language; and technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly."

A.2d 720 (1981). The actions of the defendant and his companions constituted an implied threat of force. The defendant backed up the car into a position where he could view the events and from where his companions could approach the victim. At night, in a deserted area, the defendant's companions walked toward the victim and told him to "come here." The victim was then ordered to take off and hand over his coat, hat and necklace. The victim was then told to run. All of this evidence is sufficient to show that the defendant implicitly threatened the immediate use of physical force. The evidence, therefore, was sufficient to sustain a conviction of robbery in the second degree.

Just as the defendant's claim of insufficient evidence that he did not actively participate in the larceny failed, so must this claim fail as it applies to the robbery. The prerequisites to accessorial liability are equally applicable to the charge of larceny in the second degree, and robbery in the second degree. Because there was sufficient evidence for the jury to find that the defendant was more than a mere inactively or passively acquiescing companion in the act of larceny, which was part of the same underlying chain of events as the robbery, the defendant's claim of insufficient evidence as to the robbery must also fail.

### III

The defendant next argues that, as charged, second degree larceny was a lesser included offense of second degree robbery, so that his conviction for both constitutes double jeopardy. We find no such violation of the defendant's double jeopardy rights.

The double jeopardy prohibition of the fifth amendment of the United States constitution applies to the states through the fourteenth amendment to the United States constitution. *State* v. *McCall,* 187 Conn. 73, 89, 444 A.2d 896 (1982). Double jeopardy analysis in the

context of a single trial is a two step process. First, the charges must arise out of the same act or transaction. Second, it must be determined whether the charged crimes are the same offense, or, in other words, whether the proof of a violation of one statute necessarily requires proof of a violation of the other. *State* v. *Boucino,* 199 Conn. 207, 222, 506 A.2d 125 (1986). As to whether the crimes constitute the same offense, the test to be applied "is whether each provision requires proof of a fact which the other does not." *Blockburger* v. *United States,* 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932).

In making his double jeopardy claim, the defendant directs us to the substitute information. That document in its first paragraph charges that the defendant committed robbery in the second degree in that he "stole certain property from [the victim] and was aided by another person actually present, in violation of section 53a-135 (a) (1) and 53a-133 of the Connecticut General Statutes." In the second paragraph, the substitute information alleges that the defendant committed larceny in the second degree when "with intent to deprive another . . . of his property or to appropriate the same to himself [or] a third person, wrongfully took, from the person of [the victim] such property in violation of section 53a-119 and 53a-123 (a) (3) of the Connecticut General Statutes." The defendant argues that these two counts allege the same crime because it would have been impossible for the defendant to have "stolen certain property from [the victim]" without having first taken "from the person of [the victim] such property." Our prior analysis discusses the important requirement of larceny in the second degree that property be taken "from the person of another," and not merely stolen. We have concluded in part I that the evidence was sufficient to show that property was taken from the per-

son of the victim in this case. The plain language of the substitute information, therefore, clearly alleges two separate crimes.

The defendant further argues that if we adopt the view that the facts recited earlier regarding the larceny did in fact constitute larceny in the second degree, second degree robbery and second degree larceny would be indistinguishable crimes, and we would have to find double jeopardy. We disagree because the state had to prove different elements in order to convict the defendant of both second degree larceny and second degree robbery.

A review of the relevant statutes indicates that the crimes of larceny in the second degree and robbery in the second degree require proof of distinct elements. To convict the defendant of second degree larceny, the state had to prove that "the property, regardless of its nature or value, is taken from the person of another." General Statutes § 53a-123 (a) (3); see footnote 1, supra. The elements of second degree larceny, therefore, are (1) property and (2) taken from the person of another. We concluded in part I that the actions taken by the defendant's companions constituted a taking of property from the person of another. Conviction for robbery in the second degree requires that the defendant, while committing a robbery "is aided by another person actually present . . . ." General Statutes § 53a-135 (a) (1); see footnote 2, supra. A person commits robbery when, while committing a larceny he "uses or threatens the immediate use of physical force upon another person for the purpose of . . . (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny." General Statutes § 53a-133; see footnote 2, supra. The elements of second degree robbery therefore are (1) a larceny, (2) a threat that (3) compels the delivering up

of the property (4) while aided by another person actually present. This court has held that larceny in the second degree under § 53a-123 (a) (3) is a separate offense from that of robbery because a taking from a victim's person as required for larceny in the second degree under subdivision (3) is not required to satisfy the larceny component of a robbery. *State* v. *Hudson,* 14 Conn. App. 472, 476, 541 A.2d 539 (1988). Robbery in the second degree under § 53a-135 (a) (1), on the other hand, requires both a threat and assistance by another person actually present, neither of which is required for second degree larceny. Thus, each statute requires proof of facts that the other does not and the defendant's double jeopardy claim must fail.

The judgment is affirmed.

In this opinion the other judges concurred.