STATE OF CONNECTICUT *v.* FREDDY PAYNE
(10997)

DALY, O'CONNELL and FREEDMAN, Js.

Argued April 2—decision released May 25, 1993

*Neal Cone,* assistant public defender, with whom, on the brief, were *G. Douglas Nash,* public defender, and *Carolyn M. Jones,* certified legal intern, for the appellant (defendant).

*Jack W. Fischer,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Elpedio Vitale,* assistant state's attorney, for the appellee (state).

FREEDMAN, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of criminal attempt to commit burglary in the second degree in violation of General Statutes §§ 53a-49 and 53a-102 (a) and conspiracy to commit burglary in the second degree in violation of General Statutes §§ 53a-48 (a) and 53a-102 (a). On appeal, he claims that the trial court improperly (1) allowed testimony that the complainants' window was broken by a rock the night before the incident at issue, (2) failed to instruct the jury on criminal trespass in the second degree as a lesser included offense, (3) instructed the jury on intoxication, (4) instructed the jury on reasonable doubt, and (5) instructed the jurors on their duties. We affirm the judgment of the trial court.

The jury could have reasonably found the following facts. On December 16, 1988, at about 3 a.m., Wesley Smith and his wife were sleeping in the living room of their apartment in the Prospect Garden Apartments

at 470 Prospect Street in New Haven. Smith woke up and heard the front storm door opening and the doorbell ringing. Smith arose and looked out his front window to see who was at the door. At the time, no lights were on either inside or outside of the house. Smith saw two males at the door. He did not recognize them, and he asked his wife to call the police, which she did.

From where Smith was at a window, it would have been possible to hear voices at the front door but not discern a conversation. Smith did not hear voices and did not hear any names being called out. After ringing the doorbell repeatedly, the men knocked on the door. After the men stopped knocking, Smith heard them jiggle the doorknob. One of the men then opened the mail slot and reached in with his hand as far as the wrist and moved it back and forth. Smith then heard the front door creak as if someone was leaning on it.

At this point, the police arrived. A few minutes had passed between Smith's first seeing the two men and the arrival of the police.

On December 16, 1988, Frederick Hurley, a New Haven police detective, was working with another police detective, Mel Cartoceti. At about 3 a.m., they were in a car parked at the intersection of Prospect and Canner Streets, approximately 200 yards from 470 Prospect Street. After being informed of a burglary in progress, Hurley and Cartoceti arrived at the scene in about ten seconds.

The detectives saw two males with their backs to the street between the open storm door and the closed front door at 470 Prospect Street. Both detectives exited their car, drew their revolvers and approached the two men. When Hurley and Cartoceti were about fifty feet away from them, the suspects turned around and

walked away in different directions. The detectives did not hear anything until the defendant saw Cartoceti and yelled to him, "Yo, Mellie, Mel."

At that point, Cartoceti recognized the defendant and approached him. A patdown search of the defendant revealed a sock rolled up with a latex glove between his inner and outer jackets. Cartoceti also found a knife case in a back pocket of the defendant's pants and the defendant's knife on the ground next to the front stoop at 470 Prospect Street.

The other suspect was apprehended by Hurley. That individual initially gave Hurley a false name but subsequently was identified as Douglas Antrum. A patdown search of Antrum revealed a screwdriver in a pocket and one half of a plastic gun in his waistband. Hurley found small pry marks around the Smiths' front door jamb near the lock and door handle.

The defendant testified at trial, consistent with his statements to the police detectives immediately after being apprehended, that he had gone out that night in search of his girl friend, who was supposed to be with a woman known to the defendant as "Pumpkin" at Pumpkin's Shelton Terrace apartment. He claimed to have mistakenly gone to the Smiths' apartment thinking that he was on Shelton Terrace. On the way, he met Antrum and together they went to the Smiths' front door thinking that it was Pumpkin's. Once at the front door, according to the defendant, the two men yelled out for Pumpkin and also yelled for her through the mail slot. The defendant claimed that he had the latex glove with him because he had been fixing a water bed earlier in the evening and had used the glove to protect a cut on his hand. He denied any knowledge of the sock the officers claimed to have found with the glove. Finally, the defendant testified that he had been drinking that evening and that, although he had been intoxicated, it had not affected his memory.

The defendant's first claim pertains to testimony by Wesley Smith that was admitted by the trial court over the defendant's objection. Smith testified that at about 1:30 a.m. on December 15, 1988, the night before the alleged burglary attempt, a rock had been thrown through his living room window. The state claimed that the evidence was admissible to show why the Smiths were sleeping in their living room the following night.[1] The defendant argued that the prejudicial effect of this evidence outweighed any probative value it might have. After the trial court overruled the objection, the defendant took an exception.

The defendant claims that the trial court should not have permitted Smith to testify regarding the rock damage to his living room window. He argues that the reason the Smiths were sleeping in the living room was not a material fact in issue and that any probative value of the evidence was far outweighed by its prejudicial effect. The prejudice he claims is that the jury might have concluded that the rock throwing incident was an attempted burglary in which the defendant was involved.[2] We disagree.

"[A] trial court has broad discretion in determining whether the probative value of proffered evidence is outweighed by the prejudice that is likely to result from its admission. . . . We will not overturn the court's determination of this issue absent an abuse of discretion." (Citation omitted.) *State* v. *Busque,* 31 Conn. App. 120, 128–29, 623 A.2d 532 (1993).

---

[1] Smith testified that he and his wife were sleeping in their living room because the broken window "had not been repaired" and because they "wanted to be able to hear any noises that would indicate [that] somebody [was] around the place."

[2] Defense counsel explained: "[M]y objection is that a rock through a window indicates either some type of intrusion, or perhaps the jury could think that these guys tried that the night before to see what kind of results they would have, sort of testing the water."

The trial court's ruling was well within its discretion. The testimony concerning the rock throwing was relevant because it showed not only why Smith was very close to the front door at the time of the crime, but also that he had a heightened awareness of the sounds coming from just outside his apartment. This testimony foreclosed the jury from resorting to speculation on the question of why the Smiths happened to be present in their downstairs living room at 3 a.m. on December 16 when they normally slept in their bedroom on the second floor. This testimony also assisted the jury in understanding the witness' ability to perceive the events about which he testified. The challenged evidence, then, was admissible because it "tend[ed] to support a relevant fact even in a slight degree . . . ." *State* v. *Morrill,* 197 Conn. 507, 548, 498 A.2d 76 (1985). We must now consider whether the probative value of the evidence was outweighed by its prejudicial impact. *State* v. *Morowitz,* 200 Conn. 440, 445–46, 512 A.2d 175 (1986); *State* v. *Morrill,* supra.

The testimony here was far from prejudicial. This case does not involve evidence of the defendant's involvement in other criminal activity; compare *State* v. *Payne,* 219 Conn. 93, 98–106, 591 A.2d 1246 (1991); where the trial court's discretion to admit such evidence is limited. *State* v. *Baldwin,* 224 Conn. 347, 356, 618 A.2d 513 (1993). There was no suggestion in Smith's testimony that the rock throwing was an attempted burglary.[3] Consequently, the defendant's reliance on *Eberhardt* v. *State,* 550 So. 2d 102 (Fla. App. 1989),

[3] Later in the trial, Cartoceti referred to "an attempted burglary the night before at that location." The trial court immediately sustained the defendant's objection to the testimony and, at the defendant's request, instructed "[t]he jury [to] disregard the last comments." In the absence of a fair indication to the contrary, the jury is presumed to have followed the court's instruction to disregard Cartoceti's comment. *State* v. *Gary,* 211 Conn. 101, 107, 558 A.2d 654 (1989). The defendant did not claim in the trial court that this instruction was either insufficient or faulty.

rev. denied, 560 So. 2d 234 (Fla. 1990), is misplaced. There, the victim testified that there had been a *burglary* at the same premises the night before. In addition, there was no suggestion in Smith's testimony that it was the defendant who had been involved in the rock throwing incident. In argument to the court, outside the presence of the jury, the state specifically disclaimed any "intention to argue in front of the jury that Mr. Payne and Mr. Antrum had anything to do with the incident the night before." The defendant's suggestion of improper influence through innuendo notwithstanding, we conclude that the trial court properly admitted the challenged testimony, which was clearly understood by the jurors to be in the nature of background information to help them understand the circumstances under which Smith made his observations.

The defendant next claims that the trial court improperly refused to grant his request that it instruct the jury on the crime of attempted criminal trespass in the second degree in violation of General Statutes §§ 53a-49 and 53a-108,[4] as a lesser included offense of the crime of attempted burglary in the second degree in violation of General Statutes §§ 53a-49 and 53a-102.[5] The state contends, inter alia, that the defendant cannot succeed on this claim because he failed to submit an appropriate request to charge. We agree with the state.

To establish entitlement to a charge on a claimed lesser included offense, the defendant must meet the four requirements set forth by our Supreme Court that "(1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to com-

---

[4] General Statutes § 53a-108 (a) provides: "A person is guilty of criminal trespass in the second degree when, knowing that he is not licensed or privileged to do so, he enters or remains in a building."

[5] General Statutes § 53a-102 (a) provides: "A person is guilty of burglary in the second degree when he enters or remains unlawfully in a dwelling at night with intent to commit a crime therein."

mit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser." *State* v. *Whistnant,* 179 Conn. 576, 588, 427 A.2d 414 (1980).

"In *State* v. *McIntosh,* 199 Conn. 155, 158–61, 506 A.2d 104 (1986), our Supreme Court articulated the standards necessary to meet the first condition of *Whistnant,* which requires the defendant to request an appropriate instruction. A proposed instruction is not appropriate unless it is made in compliance with Practice Book § 854. *State* v. *Hall,* 213 Conn. 579, 591, 569 A.2d 534 (1990). In the context of a written request to charge on a lesser included offense, this requirement of § 854 is met only if the proposed request contains such a complete statement of the essential facts as would have justified the court in charging in the form requested. *Michaud* v. *Gagne,* 155 Conn. 406, 410, 232 A.2d 326 (1967), quoting *Dwyer* v. *Connecticut Co.,* 103 Conn. 678, 680, 131 A. 838 (1925) . . . . *State* v. *Killenger,* 193 Conn. 48, 57, 475 A.2d 276 (1984). A trial court has no obligation to instruct, sua sponte, on general principles of law relevant to all issues raised in evidence. . . . *State* v. *Hall,* supra, 592, quoting *State* v. *McIntosh,* supra, 160; *State* v. *Preyer,* 198 Conn. 190, 198 n.9, 502 A.2d 858 (1985)." (Internal quotation marks omitted.) *State* v. *Jupin,* 26 Conn. App. 331, 346–47, 602 A.2d 12, cert. denied, 221 Conn. 914, 603 A.2d 404 (1992).

The defendant submitted a typewritten request to charge on the lesser included offenses of criminal tres-

pass in the second degree and simple trespass in violation of General Statutes § 53a-110a. This request failed to cite any essential facts or any legal authority. Thereafter, the defendant filed a handwritten amended request to charge that requested in pertinent part, "that the court charge the jury with the lesser included crimes of Criminal Attempt to commit Criminal Trespass in the second degree, C.G.S. 53a-108 and 53a-49. The authority for this request is Connecticut Jury Instructions, Second Edition, by Douglass B. Wright, pp. 1226–1231 (annexed hereto)."

The defendant's amended request to charge "did not refer to any facts or evidence which would support the request as required by Practice Book § 854. The charge requested, therefore, failed to satisfy the first prong of *Whistnant.* . . . The short request to charge did not contain a complete statement of the essential facts which would have justified the court charging the jury in the form requested." (Citation omitted.) *State* v. *Payne,* 14 Conn. App. 169, 171, 540 A.2d 87 (1988); see *State* v. *Ostroski,* 201 Conn. 534, 558, 518 A.2d 915 (1986) ("[a] summary request such as this one does not comply with our rules of practice").

The defendant, in his brief, acknowledges that the request to charge contained no facts, but he contends that this defect was cured by counsel's oral argument to the trial court regarding the request. In *State* v. *Ramirez,* 16 Conn. App. 284, 289, 547 A.2d 559, cert. denied, 209 Conn. 828, 552 A.2d 434 (1988), we rejected the view that "an in-court discussion of whether the [requested] charge was warranted, held immediately before the court's charge to the jury, is an acceptable alternative to the rules of practice. First, the rules of practice do not give oral argument as an alternative to a written request to charge. Second, the purpose of the provision, that attorneys help rather than hinder the trial court in its determination of whether a par-

ticular instruction should be given; *State* v. *McIntosh,* supra, 161; is not well served by oral argument. Rather than affording the court time to scrutinize the requests and investigate the relevant case law, so as to arrive at the proper legal answer, oral argument is likely to require the court to commit to memory the arguments of both sides, or to pressure it into making an immediate decision on the issue. We do not think it necessary or proper to burden the trial bench so."

Accordingly, we conclude that the trial court properly refused to instruct the jury on criminal trespass in the second degree as a lesser included offense.[6]

We have reviewed the record and the parties' briefs regarding the defendant's remaining claims on appeal. We find the defendant's arguments on these issues to be without merit as the claims are necessarily resolved against the defendant by controlling decisions of either our Supreme Court or this court. See *State* v. *Ortiz,* 217 Conn. 648, 661–65, 588 A.2d 127 (1991) (intoxication instruction); *State* v. *Stevenson,* 198 Conn. 560, 504 A.2d 1029 (1986) (same); *State* v. *Fernandez,* 27 Conn. App. 73, 84–88, 604 A.2d 1308, cert. denied, 222 Conn. 904, 602 A.2d 1330 (1992) (same); *State* v. *Williams,* 25 Conn. App. 456, 458–60, 595 A.2d 895, cert. denied, 220 Conn. 916, 597 A.2d 339 (1991) (same); *State* v. *Gomez,* 225 Conn. 347, 353–54, 622 A.2d 1014 (1993) (reasonable doubt instruction); *State* v. *Gray,* 221 Conn. 713, 729, 607 A.2d 391 (1992) (same); *State* v. *Thomas,* 214 Conn. 118, 570 A.2d 1123 (1990) (same); *State* v. *Boykin,* 27 Conn. App. 558, 572–73, 609 A.2d 242, cert. denied, 223 Conn. 905, 610 A.2d 179 (1992) (same); *State* v. *Harvey,* 27

---

[6] In view of our conclusion that the defendant's request to charge failed to conform to the requirements of Practice Book § 854 and *State* v. *Whistnant,* 179 Conn. 576, 588, 427 A.2d 414 (1980), we will not consider the merits of his claim that criminal trespass in the second degree is a lesser included offense of burglary in the second degree. See *State* v. *Payne,* 14 Conn. App. 169, 171, 540 A.2d 87 (1988).

Conn. App. 171, 190–94, 605 A.2d 563 (1992) (same); *State* v. *Falcon,* 26 Conn. App. 259, 269–71, 600 A.2d 1364 (1991), cert. denied, 221 Conn. 911, 602 A.2d 10 (1992) (same); *State* v. *McFadden,* 25 Conn. App. 171, 175–77, 593 A.2d 979, cert. denied, 220 Conn. 906, 593 A.2d 971 (1991) (jurors' duties instruction). Because we find neither a clear violation of a fundamental constitutional right nor a deprivation of a fair trial arising out of the challenged instructions, either standing alone or in combination, the defendant cannot prevail on these unpreserved claims. *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

The judgment is affirmed.

In this opinion the other judges concurred.