STATE OF CONNECTICUT *v.* ANTHONY ARENA
(11564)

LAVERY, FREEDMAN and SCHALLER, Js.

Argued October 26, 1993—decision released January 25, 1994

*Martin Zeldis,* assistant public defender, for the appellant (defendant).

*Marjorie Allen Dauster,* assistant state's attorney, with whom, on the brief, were *James Thomas,* state's attorney, and *Herbert Carlson, Jr.,* and *Kimberly Graham,* assistant state's attorneys, for the appellee (state).

FREEDMAN, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4),[1] and larceny in the second degree in violation of General Statutes § 53a-123 (a) (3).[2] The defendant claims that the trial court improperly (1) denied his motion to suppress a victim's out-of-court identification of him, (2) denied his motion for judgment of acquittal because the evidence was insufficient to support his conviction of robbery in the first degree, (3) refused to grant his request that it instruct the jury on the crime of robbery in the second degree in violation of General Statutes § 53a-135 (a) (2),[3] as a lesser included offense of the crime of robbery in the first degree especially after the court permitted counsel to argue robbery in the second degree to the jury, (4) denied his motion for judgment of acquittal because the evidence was insufficient to support his conviction of larceny in the second degree, and (5) failed to charge as requested on the count of larceny in the second degree. The judgment of the trial court is affirmed.

---

[1] General Statutes § 53a-134 provides in pertinent part: "(a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime . . . (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm, except that in any prosecution under this subdivision, it is an affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was not a weapon from which a shot could be discharged. . . ."

[2] General Statutes § 53a-123 provides in pertinent part: "(a) A person is guilty of larceny in the second degree when he commits larceny as defined in section 53a-119 and . . . (3) the property, regardless of its nature or value, is taken from the person of another . . . ."

[3] General Statutes § 53a-135 provides in pertinent part: "(a) A person is guilty of robbery in the second degree when he commits robbery as defined in section 53a-133 and . . . (2) in the course of the commission of the crime or of immediate flight therefrom he or another participant in the crime displays or threatens the use of what he represents by his words or conduct to be a deadly weapon or a dangerous instrument."

The jury reasonably could have found the following facts. On August 13, 1991, at about 7:30 p.m., the defendant entered a Chucky's convenience store in Hartford. Two employees, Dhanwantie Ramdayal and Alexander Smolkin, were standing behind the counter. The defendant picked out a candy and took it to the counter. He then told Ramdayal to "put it in a bag." Ramdayal was confused by the defendant's statement and asked, "Put what in a bag?" The defendant answered, "Put all the money in a bag." As the defendant said that, he placed an opaque plastic shopping bag on the counter. His hand was at the top of the bag and he gripped an object inside the bag. He pointed the object in the bag at Ramdayal. Ramdayal testified that she thought it looked like a gun and that it was round and about fifteen or sixteen inches long.

As the defendant was asking for the money, Smolkin walked toward the phone. The defendant then said to Smolkin, "Don't call the police" and "Don't play cool." Smolkin turned and saw the object in the bag in the defendant's hand. Smolkin could see the shape of the object and thought it looked like a long barrelled weapon. Smolkin further testified that in trying to make light of the situation during the robbery he joked, "Is that a real gun?" and "Is it a real robbery?"

Ramdayal was nervous and had difficulty opening the cash register. The defendant told her to open the register fast and "hurry up" and "nothing will happen." When she opened the register, she withdrew the cash from the drawer. She did not know the precise amount of money she withdrew, but she knew it was less than $100, because it is the store's policy not to have more than $100 in the drawer. She extended her hand with the money in it and the defendant snatched the money out of her hand. The defendant turned and left the store quickly, and Ramdayal called the police. The incident

was taped by security cameras and the tapes were shown to the jury and admitted into evidence.

On or about September 11, 1991, the defendant was arrested and charged with robbery in the first degree, larceny in the second degree and larceny in the sixth degree. He pleaded not guilty to those charges. The trial commenced on May 6, 1992. At the close of the state's case, the defendant filed a motion for judgment of acquittal and a motion for a new trial with respect to the robbery in the first degree and larceny in the second degree counts. The trial court denied the motion with respect to the robbery count and reserved judgment with respect to the count of larceny in the second degree. On May 15, 1992, the jury returned a verdict of guilty on all three charges. At the sentencing hearing, the defendant moved for a judgment of acquittal with respect to both larceny convictions. The trial court denied the motion with respect to the larceny in the second degree conviction and granted the motion with respect to the conviction of larceny in the sixth degree. This appeal by the defendant followed.

I

The defendant first claims that the trial court improperly denied the defendant's motion to suppress Smolkin's out-of-court identification of the defendant. The trial court held a pretrial hearing on the motion. The following additional facts are necessary for the disposition of this claim.

At the hearing, Smolkin testified that during the robbery he had a good opportunity to observe the defendant in that he was standing behind the counter and looking directly at the defendant's face. Smolkin described the defendant as being about five feet six inches tall with straight, short hair and light skin, wearing a short-sleeve T-shirt, and having callouses on his left hand.

On September 11, 1991, Hartford police officer Gary Smith showed Smolkin an array of eight photographs of similar looking men. The defendant's photograph was in position four, the right end of the top row. The photographs were located on one half of a manila folder and there were spaces for the signatures of witnesses on the other half. The signature spaces were arranged to correspond to the location of each photograph. When the folder was open, the photographs and the signature spaces were visible. When it was folded back, however, only the photographs were visible. When Smith showed the board to Smolkin, the signature spaces were folded under, and the folder was laid flat on the table in front of Smolkin. The signature spaces were not visible. Smolkin could have turned the folder over and viewed the signature spaces. Smith testified that at no time prior to his making the identification, however, did Smolkin turn the folder over.

The signature space corresponding to the photograph of the defendant contained the signature of Angel Gonzalez. This signature apparently related to an identification of the defendant, made earlier that day, as the perpetrator in an unrelated robbery. There were no other signatures in the spaces on the folder.

After the hearing on the motion to suppress, the trial court denied the motion, ruling that the procedures were not unnecessarily suggestive, and therefore declined to address the issue of the reliability of the identification.

"We have repeatedly held that a conviction based on an in-court identification which follows an out-of-court photographic identification will be set aside only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. *State* v. *Fullwood,* 193 Conn. 238, 243–44, 476 A.2d 550 (1984),

quoting *Simmons* v. *United States,* 390 U.S. 377, 384, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968); *State* v. *Vass,* [191 Conn. 604, 609, 469 A.2d 767 (1983)]; *State* v. *Doolittle,* 189 Conn. 183, 190, 455 A.2d 843 (1983). A defendant who moves to suppress identification evidence bears the initial burden of proving that the identification resulted from an unconstitutional procedure. *State* v. *Hinton,* 196 Conn. 289, 293, 493 A.2d 836 (1985); *State* v. *Fullwood,* supra, 244. The determination whether an identification procedure has violated a defendant's due process rights must be made on an ad hoc basis. The inquiry is two-pronged: [F]irst, it must be determined whether the identification procedure was unnecessarily suggestive; and second, if it is found to have been so, it must be determined whether the identification was nevertheless reliable based on examination of the totality of the circumstances. *State* v. *Hinton,* supra, 292–93, quoting *State* v. *Theriault,* 182 Conn. 366, 371–72, 438 A.2d 432 (1980); *State* v. *Austin,* 195 Conn. 496, 499, 488 A.2d 1250 (1985). *State* v. *Parker,* 197 Conn. 595, 598, 500 A.2d 551 (1985)." (Internal quotation marks omitted.) *State* v. *Vaughn,* 199 Conn. 557, 563, 508 A.2d 430, cert. denied, 479 U.S. 989, 107 S. Ct. 583, 93 L. Ed. 2d 585 (1986).

With regard to the first prong, the defendant claims that Gonzalez' signature in the signature space corresponding to the defendant's photograph resulted in an unnecessarily suggestive identification. We disagree.

In *State* v. *Vaughn,* supra, 565, our Supreme Court held that a photographic array, containing a variety of photographs, was not unnecessarily suggestive, where the photograph of the defendant was marked with the date that the identifying witness had been notified by the police that a suspect had been apprehended. The court reasoned that the record did not indicate that the witness had noticed the date on the photograph when he viewed the array.

Here, there is nothing in the record to indicate that Smolkin saw Gonzalez' signature. In fact, the record indicates that Smolkin did not see the signature before identifying the defendant. Therefore, we hold that the array used in this case was not unnecessarily suggestive, and, thus, we need not consider the second prong regarding the reliability of the identification.

## II

The defendant next claims that the trial court improperly denied the defendant's motion for judgment of acquittal because the evidence was insufficient to support the defendant's conviction of robbery in the first degree. The defendant claims that there was no evidence that he displayed or represented by his words or conduct that he had a firearm. We disagree.

"To determine the sufficiency of the evidence to sustain a conviction, we apply a twofold test. . . . We first construe the evidence in the light most favorable to sustaining the verdict. . . . We then determine whether, from that evidence and all the reasonable inferences which it yields, [the jury] could reasonably have concluded that the defendant was guilty beyond a reasonable doubt. . . . In this examination, we consider whether the [trier] could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify the verdict of guilty beyond a reasonable doubt . . . . In this process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence." (Citations omitted; internal quotation marks omitted.) *State* v. *Maxwell,* 29 Conn. App. 704, 708, 618 A.2d 43 (1992),

cert. denied, 225 Conn. 904, 621 A.2d 287, cert. denied, U.S. , 113 S. Ct. 3057, 125 L. Ed. 2d 740 (1993).

"When applying the sufficiency of the evidence test, the court must ensure that [e]ach essential element of the crime charged . . . [was] established by proof beyond a reasonable doubt, and although it is within the province of the [trier] to draw reasonable, logical inferences from the facts proven, [it] may not resort to speculation and conjecture. . . . Where it cannot be said that a rational trier of fact could find guilt proven beyond a reasonable doubt, then, a conviction cannot constitutionally stand, as it is violative of due process under the fourteenth amendment. . . . [T]he burden rested upon the prosecution to prove the guilt of the accused, i.e., to prove each material element of the offense charged beyond a reasonable doubt. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Lee*, 32 Conn. App. 84, 97–98, 628 A.2d 624, cert. denied, 227 Conn. 924, 632 A.2d 702 (1993).

To prove robbery in the first degree, the state must establish beyond a reasonable doubt that the defendant, in the course of the commission of the crime of robbery, displayed or threatened the use of what he represented by his words or conduct to be a firearm. General Statutes § 53a-134 (a) (4).[4] At trial, the state presented evidence demonstrating that the defendant's conduct implied that he was carrying a firearm. Both witnesses testified that in his right hand he was holding a bag they thought concealed a gun. The defendant suggested that the bag's only purpose was to hold the money. The test, however, is not whether he actually had a firearm but whether he "display[ed] or threaten[ed] the use of what he represent[ed] by his words or conduct to be a . . . firearm . . . ." General Statutes § 53a-134 (a) (4). We acknowledge that

[4] See footnote 1.

this is not a situation where the defendant said he had a gun or represented that he would shoot if his demands were not met. The evidence presented at trial, however, did include the defendant's statement to one of the witnesses "hurry up" and "nothing will happen." Implicit in that statement is a threat of harm.

We now consider this evidence in the light most favorable to sustaining the verdict. Considering that statement by the defendant and the way the defendant held the object in the bag, the jury could reasonably have inferred that the defendant either carried a firearm or wanted the store clerks to think he had a firearm. Although the jurors may draw reasonable, logical inferences from the facts proven, they may not resort to speculation and conjecture. *State* v. *Morrill,* 193 Conn. 602, 608, 478 A.2d 994 (1984). We conclude that the facts in this case do not require the jury to resort to speculation or conjecture to infer that the defendant acted as though he carried a firearm.

Because there was sufficient evidence for the jury to infer that the defendant acted as though he carried a firearm, the court properly denied the defendant's motion for judgment of acquittal on the charge of robbery in the first degree.

III

The defendant next claims that the trial judge improperly refused to grant his request for an instruction to the jury on the crime of robbery in the second degree in violation of General Statutes § 53a-135 (a) (2), as a lesser included offense of the crime of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4). Additionally, the defendant claims he was further prejudiced by the trial court's permitting counsel to argue robbery in the second degree to the jury and then failing to charge on it. We do not agree.

The following additional facts are necessary for the disposition of these claims. The defendant filed a request to charge asking the court to instruct the jury that it could find the defendant guilty of robbery in the second degree as a lesser included offense of robbery in the first degree. Out of the presence of the jury, the trial court stated it would charge on robbery in the second degree and robbery in the third degree as lesser included offenses. The defendant explained to the jury in his closing argument that they could find the defendant guilty of robbery in the second degree. The prosecution also argued robbery in the second degree to the jury.

Before the charge to the jury, however, the trial judge informed the parties that after reviewing the cases and statutes he had decided not to charge on robbery in the second degree as a lesser included offense. Defense counsel raised his concern that he had already told the jury in his closing argument that they could find the defendant guilty of robbery in the second degree. In light of this, the trial court offered to make a curative charge to the jury and also offered to allow defense counsel to address the jury for the purpose of clarifying any confusion regarding the lack of a charge on robbery in the second degree. Defense counsel declined, stating he was concerned that calling attention to it would only further prejudice his client. The trial judge then charged the jury as to robbery in the first degree and robbery in the third degree as a lesser included offense, without charging on robbery in the second degree as a lesser included offense and without referring to the parties' closing arguments that included robbery in the second degree.

The first part of the defendant's claim requires us to consider whether the defendant was entitled to the charge of robbery in the second degree as a lesser included offense. The test for determining when the

defendant is entitled to a charge on a lesser included offense was set forth in *State* v. *Whistnant,* 179 Conn. 576, 588, 427 A.2d 414 (1980).

"A defendant is entitled to an instruction on a lesser included offense if, and only if, the following conditions are met: (1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser." Id. The state claims that the defendant has not satisfied the first, third and fourth conditions of the *Whistnant* test. We agree that the defendant did not satisfy the first condition.

A proposed instruction is not appropriate unless it is made in compliance with Practice Book § 854. *State* v. *Hall,* 213 Conn. 579, 591, 569 A.2d 534 (1990). Practice Book § 854 provides in pertinent part: "When there are several requests, they shall be in separate and numbered paragraphs, *each containing a single proposition of law clearly and concisely stated with the citation of authority upon which it is based, and the evidence to which the proposition would apply. . . ."* (Emphasis added.)

"The defendant must provide the trial court with the *factual and legal basis* for the charge before an appellate court can find error in the court's refusal to give the charge as requested." (Emphasis added.) *State* v. *Robinson,* 14 Conn. App. 40, 45–46, 539 A.2d 606, cert.

denied, 488 U.S. 899, 109 S. Ct. 244, 102 L. Ed. 2d 233 (1988). In the context of a written request to charge on a lesser included offense, the requirements of § 854 are met only if the proposed request contains (1) a complete statement of the essential facts that would have justified the court in charging in the form requested; *State* v. *Killenger,* 193 Conn. 48, 57, 475 A.2d 276 (1984); *Michaud* v. *Gagne,* 155 Conn. 406, 410, 232 A.2d 326 (1967); *Dwyer* v. *Connecticut Co.,* 103 Conn. 678, 680, 131 A. 838 (1925); *State* v. *Payne,* 31 Conn. App. 370, 377, 625 A.2d 231, cert. denied, 227 Conn. 901, 630 A.2d 73 (1993); (2) the applicable proposition of law clearly and concisely stated; *State* v. *McIntosh,* 199 Conn. 155, 159–60, 506 A.2d 104 (1986); and (3) the citation of authority on which the proposition of law is based. Id., 160; *State* v. *Martin,* 15 Conn. App. 58, 65, 544 A.2d 231 (1988), aff'd on other grounds, 211 Conn. 389, 559 A.2d 707 (1989); *State* v. *Thurman,* 10 Conn. App. 302, 318, 523 A.2d 891, cert. denied, 204 Conn. 805, 528 A.2d 1152 (1987).

The defendant submitted a typewritten request to charge on the lesser included offenses of robbery in the second degree and robbery in the third degree.[5] This request to charge failed to comply with the requirements set forth in Practice Book § 854. In its request to charge, the defendant failed to present the trial court with any authority addressing the issue of whether rob-

---

[5] The defendant's request to charge included the following:

"A. Proposed Instructions

"1. Robbery in the Second Degree

"Robbery in the second degree as relevant as a lesser included offense in the instant matter is found in our statutes at 53a-135 (a) (2) of the Connecticut General Statutes and provides that if in the course of the commission of the crime or the immediate flight therefrom the perpetrator displays or threatens the use of what he represents by his words or conduct to be a deadly weapon or a dangerous instrument he may be found guilty of the crime of robbery in the second degree. Deadly weapon means [text of § 53a-3 (6)]. Dangerous instrument means [text of § 53a-3 (7) as relevant]. If you find that the defendant has been proven guilty beyond a reasonable doubt of each and every element of this crime, then you should find him

bery in the second degree under General Statutes § 53a-135 (a) (2) is a lesser included offense of robbery in the first degree under General Statutes § 53a-134 (a) (4).

The legal authority presented by the defendant listed only "Borden and Orland, Connecticut Practice Book, Vol. 5, Criminal Jury Instructions § 13.7–13.9; *State* v. *Whistnant,* [supra, 583]; *State* v. *Smith,* 185 Conn., 63, 75–79 [441 A.2d 84] (1981)." Our Supreme Court has held that "*Whistnant,* by itself, does not provide the substantive principles of the criminal law which would justify any particular instruction. In setting the four preconditions to a lesser included offense instruction, *Whistnant* states no more than a rule of procedure which must be followed before the requested instruction need be given." *State* v. *McIntosh,* supra. Like *Whistnant, State* v. *Smith,* supra, 76–77, sets forth the procedure that must be followed to request an instruction on a lesser included offense. Furthermore, *Smith* deals with criminally negligent homicide, so any

guilty. If you find that the defendant has not been proven guilty beyond a reasonable doubt of each and every element of this crime, then you must find him not guilty of robbery in the second degree.

"2. Robbery in the Third Degree

\* \* \*

"B. Legal Authority

"Borden and Orland, Connecticut Practice Book, Vol. 5, Criminal Jury Instructions § 13.7–13.9; *State* v. *Whistnant,* [179 Conn. 576, 583, 427 A.2d 414 (1980)]; *State* v. *Smith,* 185 Conn. 63, 75–79 [441 A.2d 84] (1981).

"C. Factual Basis

"The testimony from both clerk witnesses was that the perpetrator carried with him a plastic shopping bag which they could not see through and that at the onset of the robbery the perpetrator placed this bag on the store counter and demanded money. While both clerks stated that they thought the bag contained a firearm neither clerk saw any portion of the object they believed was contained inside the bag and both clerks testified that at no time did the perpetrator verbally threaten the use of a firearm or any other weapon that may have been contained inside the bag, and that at no time did the perpetrator display or discharge the firearm or other weapon that may have been contained inside the bag."

reasoning set forth therein would not support the defendant's request for a charge on the lesser included offense of robbery in the second degree.

The defendant's citation to 5 Connecticut Practice, D. Borden & L. Orland, Criminal Jury Instructions (1986) §§ 13.7 through 13.9, does not satisfy the requirement of a citation of authority on which to base the request to charge on the lesser included offense of robbery in the second degree. Borden and Orland cite *State* v. *Anderson,* 178 Conn. 287, 292–94, 422 A.2d 323 (1979), as addressing the issue of whether second degree robbery is a lesser included offense of first degree robbery. In *Anderson,* our Supreme Court addressed the question of whether subdivisions (1) and (2) of General Statutes § 53a-135 (a) are lesser offenses included within General Statutes § 53a-134 (a) (2). The Supreme Court determined that they are not lesser included offenses. The Supreme Court did not address the question of whether § 53a-135 (a) (2) is a lesser included offense of § 53a-134 (a) (4).

"While this court does not favor unyielding adherence to rules of procedure where the interests of justice are thereby disserved . . . [t]he ever increasing refinement of our law justifies the cooperation of counsel in stating requests for jury instructions, and this cooperation is mandated, at least to the extent of substantial compliance with Practice Book § 852 [now § 854]. The minor burden of cooperation imposed by this section is neither unreasonable nor novel." (Citations omitted.) *State* v. *McIntosh,* supra, 160–61. Having concluded that the defendant failed to satisfy the first condition of *Whistnant,* we need not consider the second, third or fourth conditions of the *Whistnant* test.[6]

---

[6] Although we are not required to consider the second, third or fourth conditions of the *Whistnant* test in order to avoid the appearance that we

The defendant further claims that the he was prejudiced by the trial court's allowing the parties to argue robbery in the second degree to the jury and then failing to charge the jury on robbery in the second degree.

The defendant, citing 46 Am. Jur. 2d 123, Judges § 41 (1969), asserts that we should rely on the proposition that trial courts, in reviewing other trial courts' rulings, should "ordinarily hesitate to vacate, modify, or depart from an interlocutory order or ruling made in the same case by another judge with equal powers."

"favor unyielding adherence to rules of procedure where the interests of justice are thereby disserved"; *State* v. *McIntosh,* 199 Conn. 155, 160, 506 A.2d 104 (1986); we note that in addition to the failure to meet the first condition, the defendant has also failed to meet the fourth condition. The difference between robbery in the first degree in violation of General Statutes § 53a-134 (a) (4) and robbery in the second degree in violation of General Statutes § 53a-135 (a) (2) is that to convict the defendant of robbery in the first degree he must have displayed or threatened the use of what he represented by his words or conduct to be a firearm, while robbery in the second degree requires only the display or threatened use of what the defendant represents by his words or conduct to be a deadly weapon or dangerous instrument. Our review of the evidence presented at trial reveals that both of the state's witnesses testified that they thought the defendant held a gun concealed in the bag. There was no evidence presented that contradicted the testimony of the witnesses that they believed, based on the defendant's actions, that the object the defendant displayed or threatened the use of was a gun. The defendant cross-examined the two state's witnesses and asked if the bag could have contained something other than a gun. They responded that it was possible, but that response does not rise to the level of placing the issue sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense (display or threatened use of a firearm) but guilty of the lesser (display or threatened use of a deadly weapon or dangerous instrument). Thus, the defendant failed to satisfy the fourth condition of the *Whistnant* test.

In view of our conclusion that the defendant's request to charge failed to conform to the requirements of Practice Book § 854 and *State* v. *Whistnant,* 179 Conn. 576, 588, 427 A.2d 414 (1980), we need not consider the merits of his claim that robbery in the second degree is a lesser included offense of robbery in the first degree. See *State* v. *Payne,* 31 Conn. App. 370, 376–77, 625 A.2d 231 (1993); *State* v. *Payne,* 14 Conn. App. 169, 171, 540 A.2d 87 (1988).

The defendant contends that this proposition should be extended to the situation where a judge reconsiders his or her own ruling, especially here, where the defendant alleges he relied on the first ruling to his prejudice. We are not persuaded. To the contrary, we believe that the proper rule is to allow the trial court every opportunity during trial to correct any mistakes made.

Here, the trial court offered to make a curative instruction to the jury and to allow defense counsel to readdress the jury. It is likely that a curative instruction would have cured any error on the part of the trial court. For example, as the state points out in its brief, "the trial court could have informed the jury that for legal reasons unrelated to the merits of the defendant's factual claims, the trial court had changed an earlier ruling, and would not permit the jury to consider robbery in the second degree, and that the jury was to draw no inferences adverse to the defendant on account of the defense counsel's argument on robbery in the second degree in reliance on the court's earlier ruling." Because "[s]uch curative instructions are entitled to great weight and ordinarily prevent an appellate court from finding that the trial court committed reversible error"; (internal quotation marks omitted) *State* v. *Harris,* 28 Conn. App. 474, 481, 612 A.2d 123, cert. denied, 223 Conn. 926, 614 A.2d 828 (1992); we conclude that the defendant's decision to refuse the curative instruction and the opportunity to readdress the jury, which would likely have cured any error, prevents him from now claiming error by the trial court.

IV

The defendant next claims that the trial court improperly denied the defendant's motion for judgment of acquittal because the evidence was insufficient to sup-

port the defendant's conviction of larceny in the second degree. We disagree.[7]

To prove larceny in the second degree, the state must establish beyond a reasonable doubt that the defendant took "property, regardless of its nature or value . . . from the person of another . . . ." General Statutes § 53a-123 (a) (3).[8] The defendant cites a number of cases holding that, in order for larceny in the second degree to have occurred, there must have been a trespass to the person of the victim. "In *State* v. *Crowe,* 174 Conn. 129, 134, 384 A.2d 340 (1977), our Supreme Court, after noting a divergence among authorities on what constitutes a taking from the person, held: 'In our view, larceny from the person requires an actual trespass to the person of the victim. Because of the trespass to the person, the offense is a serious crime in itself so that the value of the property stolen does not enter into the magnitude of the crime. On the other hand, the removal of property from the presence or control of the victim lacks such a trespass and is insufficient to constitute larceny from the person. We are, therefore, in accord with the rule that larceny from the person is a separate and distinct offense from that of simple larceny.' In *Crowe,* the defendants forced a service station attendant, at gunpoint, into a backroom of the station, and then stole a money bag and the attendant's car. Our Supreme Court reasoned that larceny in the second degree had not occurred because the money and car keys were not taken from the person of the attendant. Likewise, in *In re Juvenile Appeal (84-4),* 1 Conn. App. 642, 474 A.2d 485 (1984), we held that when a radio was taken from near the victim while the victim was held at knifepoint, there was no taking from the person as required by the statute." *State* v.

---

[7] The standard of review for a claim of insufficient evidence is set forth in part II.

[8] See footnote 2.

*Littles,* 31 Conn. App. 47, 51–52, 623 A.2d 500, cert. denied, 227 Conn. 902, 630 A.2d 72 (1993). In *State* v. *Littles,* supra, 52, "the victim was walking near a dark parking lot at night when he encountered two men who asked him if he had any money. The men then asked the victim to hand over certain personal items. Although the defendant's companions did not physically remove the items from the victim's person, they compelled him, by implicit threat, to hand them over." We reasoned there that because the victim was wearing the items just prior to his handing them over, the stolen property was taken from the person of the victim, and, therefore, the statutory requirement was met. Id.

The facts here are distinguishable from those in *State* v. *Crowe,* supra, *In re Juvenile Appeal (84-4),* supra, and *State* v. *Littles,* supra. Here, the defendant directed the victim to get the money, which was then not on her person, and to give it to the defendant. In *Littles,* the victim was wearing the items on his person when he first encountered the defendant. We must determine, therefore, whether a trespass to the victim's person occurs when the money was not on the victim's person until the defendant ordered the victim to hand the money to him.

In determining that larceny from the person requires an actual trespass to the person of the victim, our Supreme Court in *State* v. *Crowe,* supra, relied in part on *People* v. *McElroy,* 116 Cal. 583, 48 P. 718 (1897), and *Wilder* v. *State,* 30 Ala. App. 107, 1 So. 2d 317 (1941). "The stealing of property from the person has been from an early period under the English statutes treated as a much graver and more heinous offense than ordinary or common theft—partly by reason of the ease with which it could be perpetrated and the difficulty of guarding against it, and partly because of the greater liability of endangering the person or life of the victim." *People* v. *McElroy,* supra, 584. Because

our concern is the potential risk of endangering a victim, we see no reason to distinguish between a situation where a perpetrator demands something from the victim that is then on the victim's person, and the situation where the perpetrator compels the victim to obtain something, which once obtained is on the victim's person, and in both cases is turned over to the perpetrator. Both scenarios concern the same risk of harm to the victim. In addition, in *Wilder* v. *State,* supra, 108, the Alabama Supreme Court held that, without requiring physical touching or harm, "[u]nless the property stolen was actually on or attached to the person by his clothing or otherwise, or was in some manner in his actual *physical possession,* the offense of larceny from the person has not been committed." (Emphasis in original.) Accordingly, we conclude that the defendant committed a trespass to the victim's person when he ordered the victim to get the money and then snatched the money from her hand.

Considering this evidence in the light most favorable to sustaining the verdict, we hold that the trial court properly denied the defendant's motion for judgment of acquittal because there was sufficient evidence to find the defendant guilty of larceny in the second degree.

## V

The defendant's final claim is that the trial court failed to charge as requested on the count of larceny in the second degree and also failed to charge that larceny in the second degree required a trespass to the person. We disagree.

At the close of evidence, the defendant submitted the following written request to charge: "The defendant is also charged with larceny in the second degree as an alleged violation of § 53a-123 (a) (3) in that it is alleged that the property taken in the robbery was

taken from the person of another. In order for the defendant to be found guilty of this offense it must be proven beyond a reasonable doubt that there has been an actual trespass to the person of the victim. A mere showing that there was only a removal of the property from the presence or control of the victims lacks such a trespass and is insufficient to constitute larceny from the person as charged here. Trespass of the person involves harmful or offensive physical contact without the other's consent.''

The trial court declined to instruct the jury as the defendant requested and, instead, provided its own instruction on larceny in the second degree. The trial court instructed the jury that ''[a] person is guilty of larceny in the second degree when he commits larceny . . . and the property, regardless of its value, is taken from the person of another. To take property from the person of another means that the item taken was actually on the body or held by the person or was in some manner attached to the person of the victim.''

''It is well established that when a proper request to charge is filed [pursuant to Practice Book § 852] and the trial court has failed to charge the jury in the exact language of the request, the test is whether the court's instructions properly covered the substance of the written request. . . . A request to charge which is relevant to the issues of the case and which is an accurate statement of the law must be given. A refusal to charge in the exact words of a request will not constitute error if the requested charge is given in substance. . . . [Our Supreme Court] has often repeated that [a] charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case. . . . It is the trial court's responsibility to instruct the jury in a manner calculated to give them

a clear understanding of the issues presented for their consideration under the offenses charged and upon the evidence. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Dickerson,* 28 Conn. App. 290, 293–94, 612 A.2d 769 (1992). "A claim of error in jury instructions must be reviewed in the context of the charge as a whole." *State* v. *Gary,* 211 Conn. 101, 114, 558 A.2d 654 (1989).

In comparing the defendant's request to charge with that given by the trial court, it is apparent that the only substantive difference involves the meaning of "taking property from the person of another." We agree that this requires a trespass to the person. The defendant's assertion that a "[t]respass [to] the person involves harmful or offensive physical contact without the other's consent," however, is not an accurate statement of the law. No physical contact is required. Mere compulsion by implicit threat to hand over the property is sufficient to meet the statutory requirement that the property be taken from the person of another and would, therefore, constitute a trespass of the person. *State* v. *Littles,* supra.

Our review of the trial court's charge on larceny in the second degree reveals that the charge as given was adequate to guide the jury to a correct verdict. The trial court read the language of General Statutes § 53a-123 (a) (3) and further explained what "taking property from the person of another" means in language that accords with our case law. In light of the trial court's instruction as a whole, we cannot conclude that the trial court improperly charged on larceny in the second degree.

The judgment is affirmed.

In this opinion the other judges concurred.