[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this habeas petition, the claimant alleges that his confinement in the custody of the Commissioner of Corrections is illegal on the basis of his assertion that he was denied the effective assistance of counsel in the underlying criminal trial. Based on the evidence adduced at the habeas hearing, the court makes the following findings and order.
On September 8, 1989, following a jury trial in the Superior Court, Judicial District of New Haven, Geographic Area 6, in Docket Number CR 6 299880, the petitioner was convicted of Criminal Attempt to Commit Burglary in the Second Degree in violation of Connecticut General Statutes § 53a-49 and §53a-102, and Conspiracy to Commit Burglary in the Second Degree in violation of C.G.S. § 53a-48 and § 53a-102. On September 29, 1989, the petitioner was sentenced to a total effective sentence of eight years confinement.
The petitioner is presently an inmate confined to the custody of the Commissioner of Corrections.
The petitioner's conviction was affirmed on direct appeal.State v. Payne, 31 Conn. App. 370 (1993).
In the underlying criminal prosecution, the petitioner was represented by Attorney Peter Blessinger. The State was represented by Assistant State's Attorney Elpedio Vitale. CT Page 5257
At the criminal trial, the State offered evidence that in the early morning hours of December 16, 1988, the petitioner and one Douglas Antrum were apprehended in the vicinity of 470 Prospect Street, New Haven. The police, who had responded to a phone call from inhabitants of 470 Prospect Street that persons were at the building's front door attempting to forcibly enter the premise, initially eyed Payne and Antrum between the storm door and front door of the building. When Payne and Antrum saw the police, they attempted to walk away from the scene, and Payne threw a knife to the ground. Stopped and frisked by the police, Payne was found to be in possession of latex gloves, a sock, and a knife case. The knife was found on the ground nearby. Antrum, who initially gave the police a false name, was found in possession of a toy gun and a screwdriver.
Wesley Smith, who lived in the building, testified that he heard individuals knocking at the door and ringing its doorbell. He then heard someone trying to open the door, and noted that someone was reaching into the mail slot. Super alert by reason of the fact that someone had thrown a rock through a window the evening before, Smith's wife quickly called the police who found Payne and Antrum at the scene.
When Payne and Antrum were confronted by the police, Smith claimed that they were looking for a female friend who they thought was in the building. There was no evidence of this person at the locale.
The petitioner's right to the effective assistance of counsel is assured by the sixth and fourteenth amendments to the Federal constitution and by Article First, Section 8 of the Connecticut constitution. In order to prove that his counsel's performance was deficient, the petitioner must demonstrate that trial counsel's representation fell below an objective standard of reasonableness. Aillon v. Meachum, 211 Conn. 352 (1989). Competent representation is not to be equated with perfection. "The constitution guarantees only a fair trial and a competent attorney; it does not ensure that every conceivable constitutional claim will be recognized and raised." Jeffrey v.Commissioner, 36 Conn. App. 216 (1994) (citations omitted). "Defense counsel's performance must be reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law." (Citations omitted; internal quotations marks omitted.) Johnson v.CT Page 5258Commissioner, 36 Conn. App. 695 (1995).
The Strickland court also gave guidance to the trial bench for its assessment of ineffective claims. The Supreme Court opined: "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy' . . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." (Citations omitted.) Strickland v.Washington, supra, 466 U.S. 689-90; Quintana v. Warden,220 Conn. 1 (1991); Williams v. Warden, 217 Conn. 419 (1991); Jeffrey v.Commissioner, 36 Conn. App. 216 (1994).
With respect to the prejudice component of the Strickland
test, the petitioner must demonstrate that, ". . . counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland v.Washington, supra 466 U.S. 687. Thus, "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Id., 691. "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceedings." Id., 693. Rather, a successful petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Copas v.Commissioner, 234 Conn. 139 (1995). "A reasonable probability is a probability sufficient to undermine confidence in the outcome."Strickland v. Washington, supra 466 U.S. 694. "`When a [petitioner] challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the CT Page 5259 fact finder would have had a reasonable doubt respecting guilt.'"Fair v. Warden, 211 Conn. 398, 408 (1989); Jeffrey v.Commissioner, 36 Conn. App. 216 (1994).
This petition is a broadside attack on the quality of trial counsel's performance. The petitioner claims that counsel failed to photograph, measure, or otherwise investigate marks on the door of the building he was found to have attempted to burglarize, that counsel failed to call Douglas Antrum as a witness, failed to properly object to statements made by the prosecutor concerning the conduct of the petitioner regarding his attempt to dispose of a knife, failed to object to the introduction of an incomplete or inaccurate street map of New Haven, and made misstatements of facts reflecting poorly on the petitioner during closing argument.
This case is remarkable only for its abject lack of merit. As to the petitioner's claim that counsel failed to have marks on the door measured or photographed, a review of the trial evidence demonstrates that Attorney Blessinger both investigated this issue before trial and effectively dealt with it during trial. Attorney Blessinger called as a defense witness Mary Yopp Hill, an investigator with the Public Defender's office, who presented photographs of the door. More importantly, through examination of both Hill and Smith, Attorney Blessinger was able to adduce testimony that, while there were pry marks by the door jam, Smith was not able to state that they were first present on the door on the night of the incident. Indeed, while Smith indicated that he had not seen the pry marks prior to being shown them by the police, he had no idea when they had first been made on the building's front door.
With respect to the street map, during cross examination of the petitioner, Attorney Vitale showed him a map which, at that point, had only been marked for identification. On questioning, Payne was able to point out several streets in the vicinity of the attempted burglary, none of which was a substantial distance from his dwelling at the time. With these locales thus noted, Attorney Vitale was able to have the map introduced as a full exhibit. Introduction of this map annotated by Payne gave lie to his claim that he was not familiar with the area. Attorney Blessinger was not required to object to the receipt of clearly admissible demonstrative evidence.
With respect to the petitioner's claims regarding Attorney CT Page 5260 Vitale's closing argument and his statements regarding the petitioner's attempt to dispose of the knife, the petitioner presented no credible evidence in support of these assertions at the habeas hearing. Additionally, counsels' closing arguments were not transcribed. Accordingly, the petitioner has failed to sustain his burden of proof with respect to these statements allegedly made by Attorney Vitale.
The petitioner's claim that Attorney Blessinger was ineffective for failing to call Antrum as a witness borders on the absurd. Apprehended and charged as a codefendant, Antrum ultimately accepted a plea negotiation and pleaded guilty for his participation in this attempted burglary. Now an inmate himself incarcerated on unrelated charges, Antrum testified at the habeas hearing that if he had been called to testify in Payne's trial, he would have stated that they were merely looking for Payne's female friend, and that they had no criminal intent when apprehended by the police. He would have testified that earlier in the evening, while Payne was in a bar, he was across the street, and the two of them went together to the Prospect Street location looking for Payne's girlfriend. He stated that he and Payne had been together earlier in the day, and he claimed that he had possession of a toy gun only because he had been playing with children earlier in the day. Additionally, Antrum testified that he did not believe that he had a screw driver, and he denied that when confronted by police detectives, he initially gave them a false name.
The court views Antrum's habeas testimony as ranging from untrustworthy to plainly dishonest. He fabrication concerning events earlier in the evening was not even in accord with Payne's recitation that the two joined together after Payne was already en route, walking up a hill toward the Prospect Street building. Additionally, Payne denied at trial that he and Antrum had been together earlier in the day, while Antrum, at least until confronted with the inconsistency, testified that he and Payne had been together in the evening. On the cross examination at the habeas hearing, he offered no justification for carrying a toy pistol in his waistband, except that earlier in the day he had been playing with children. And he reiterated his denial that he had given a false name when he and Payne were initially confronted by the police. According to Antrum, Police testimony to the contrary at Payne's criminal trial was erroneous.
Attorney Blessinger testified that he declined to call Antrum CT Page 5261 because of his belief that Antrum would have been subject to impeachment for his conviction of this offense and for his lack of credibility. Having had the opportunity to observe and listen to Antrum, the court finds no fault and much support for the wisdom of Attorney Blessinger's judgment.
Accordingly, the petition is dismissed.
Bishop, J.