STATE OF CONNECTICUT *v.* TIMOTHY DRAKE
(6719)

STOUGHTON, NORCOTT and FOTI, Js.

Argued June 21—decision released August 15, 1989

*Steven J. DeFrank,* special public defender, with whom, on the brief, was *William M. Bloss,* special public defender, for the appellant (defendant).

*Judith Rossi,* assistant state's attorney, with whom, on the brief, were *Eugene Callahan,* state's attorney,

and *Warren Murray,* deputy assistant state's attorney, for the appellee (state).

STOUGHTON, J. The defendant has appealed from the judgment following his conviction by a jury of burglary in the second degree, in violation of General Statutes § 53a-102,[1] unlawful restraint in the second degree, in violation of General Statutes § 53a-96,[2] and falsely reporting an incident, in violation of General Statutes § 53a-180.[3]

The jury could reasonably have found the following facts. On the night of March 13, 1987, the defendant abandoned his car near Gallagher's Estate in Norwalk. He proceeded on foot to a house in Norwalk where the victim, a young woman, was asleep in an upstairs bedroom. The victim had left a light on in the downstairs

---

[1] General Statutes § 53a-102 provides: "(a) A person is guilty of burglary in the second degree when he enters or remains unlawfully in a dwelling at night with intent to commit a crime therein.

"(b) Burglary in the second degree is a class C felony."

[2] General Statutes § 53a-96 provides: "(a) A person is guilty of unlawful restraint in the second degree when he restrains another person.

"(b) Unlawful restraint in the second degree is a class A misdemeanor."

[3] General Statutes § 53a-180 provides: "(a) A person is guilty of falsely reporting an incident when, knowing the information reported, conveyed or circulated to be false or baseless, he: (1) Initiates or circulates a false report or warning of an alleged occurrence or impending occurrence of a fire, explosion, crime, catastrophe or emergency under circumstances in which it is likely that public alarm or inconvenience will result; or (2) reports by word or action, to any official or quasi-official agency or organization having the function of dealing with emergencies involving danger to life or property, an alleged occurrence or impending occurrence of a fire, explosion or other catastrophe or emergency which did not in fact occur or does not in fact exist; or (3) gratuitously reports to a law enforcement officer or agency (A) the alleged occurrence of an offense or incident which did not in fact occur, (B) an allegedly impending occurrence of an offense or incident which in fact is not about to occur, or (C) false information relating to an actual offense or incident or to the alleged implication of some person therein.

"(b) Falsely reporting an incident is a class A misdemeanor."

living room and in the upstairs hallway. She was awakened at around 3 a.m. by the defendant's pounding on the back door of the house. She then heard shattering glass. As she was dialing for the police, the defendant came into the bedroom and said to her, "Put down the phone. I'm not here to rob you. I'm running from the police." He told the victim that the house was surrounded by police, that the police had stopped him for speeding, and that he was on parole. The victim also testified that the defendant was bigger than she.

The defendant then stayed with the victim for one hour and forty minutes. During that time, he told the victim where he had abandoned his car, had two glasses of water, and made four telephone calls. Finally, a woman drove up in a station wagon and parked in the driveway of the victim's house. The defendant instructed the victim to allow the woman into the house. The defendant then instructed the woman to go back outside and make sure that no police were lurking about the house. After the woman went outside to look around, she flashed the headlights of her station wagon. The defendant then left the house and drove off with the woman in the station wagon. The police determined the defendant's identity from the registration of the car he had abandoned, from blood samples in the home, and from the victim's identification.

The defendant reported his car stolen on the morning of March 14. Later that day, the police called him, told him that they had found his car, and asked him to come down to the station to claim it. Thereafter, the defendant arrived at the Norwalk police station where he was arrested pursuant to a warrant.

On appeal, the defendant claims that the trial court erred in failing to render a judgment of acquittal on the convictions for burglary and unlawful restraint. He does not challenge his conviction for falsely reporting an incident.

The defendant claims that there was insufficient evidence to support the convictions for burglary and unlawful restraint, and that the trial court deprived him of his right to a unanimous verdict. He seeks review under *State* v. *Evans,* 165 Conn. 61, 327 A.2d 536 (1973).

We first give these claims a limited review under *State* v. *Evans,* supra, in order to determine whether they are truly of constitutional proportions or are merely characterized as such by the defendant. *State* v. *Utz,* 201 Conn. 190, 208, 513 A.2d 1191 (1986). The record adequately supports an allegation that the claim of insufficiency of evidence with respect to the burglary and unlawful restraint convictions is of constitutional proportions; see *State* v. *Ruth,* 16 Conn. App. 148, 153, 547 A.2d 548 (1988); *State* v. *Dickson,* 10 Conn. App. 462, 464, 523 A.2d 935 (1987); and therefore we review these claims.

The defendant's first claim of error is that there was insufficient evidence to support his conviction on the burglary count. He contends that no evidence was presented to show that he had the intent to commit a crime within the dwelling at the exact moment that he unlawfully entered it.

The standard of review of a claim of insufficiency of evidence is well established. We consider the evidence in the light most favorable to sustaining the jury's verdict, and we will affirm that verdict if it is reasonably supported by the evidence and the logical inferences drawn therefrom. *State* v. *Cates,* 202 Conn. 615, 627, 522 A.2d 788 (1987); *State* v. *Sinclair,* 197 Conn. 574, 576, 500 A.2d 539 (1985). After carefully reviewing the record in this case, we find ample evidence to support the defendant's convictions. The nature of the defendant's entry was itself evidence from which the jury could infer his intent to commit a crime within the

house. As our Supreme Court stated in *State* v. *Little,* 194 Conn. 665, 675, 485 A.2d 913 (1984), "[t]he time, manner and forcible nature of the entry permitted a reasonable inference, based on human experience, that the unlawful entry by the defendant was hardly without purpose, but rather was with the intent to commit a crime therein." There is no merit to this claim.

The defendant next contends that there was insufficient evidence to support his conviction for unlawful restraint because there was no evidence that he assaulted or threatened the victim or that force was imminent.

"Restrain" is defined in General Statutes § 53a-91 (1) as "to restrict a person's movements intentionally and unlawfully in such a manner as to interfere substantially with his liberty by moving him from one place to another, or by confining him either in the place where the restriction commences or in a place to which he has been moved, without consent. As used herein 'without consent' means, but is not limited to, (a) deception and (b) any means whatever, including acquiescence of the victim, if he is a child less than sixteen years old or an incompetent person and the parent, guardian or other person or institution having lawful control or custody of him has not acquiesced in the movement or confinement."

There was sufficient evidence for a reasonable jury to conclude that the defendant had confined the victim in her home without her consent. The defendant confronted the victim in her bedroom at 3 a.m. He told her to put down the phone she was holding. He was larger than the victim and appeared to be "almost desperate." He told the victim that he was on probation or parole and that he was running from the police because he could be sent back to jail. The defendant also told the victim that police with dogs were surround-

ing the house and that he would be shot. The victim testified that she felt terrorized and did not flee from the house because she was afraid the defendant would chase after her. This was sufficient evidence that the defendant's acts substantially interfered with the victim's liberty. See *State* v. *Bell,* 188 Conn. 406, 416, 450 A.2d 356 (1982). We reject the defendant's claim that there was not enough evidence to sustain his conviction of unlawful restraint.

We turn finally to the defendant's claim that he was deprived of his right to a unanimous verdict by the court's charge on burglary in the second degree.

The defendant claims that the jury could have convicted him on one of two theories of criminal liability for burglary. Under General Statutes § 53a-102, a burglary occurs whenever a person enters or remains unlawfully in a dwelling at night with intent to commit a crime therein. The state presented evidence that the defendant unlawfully entered the victim's dwelling and unlawfully remained there.

The defendant claims that the trial court erred in failing "to limit its charge to the unlawful entry alternative." Having given this claim a limited review under *State* v. *Evans,* supra, we conclude that it is not truly of constitutional proportions.

A unanimity charge on a specific act is required only if the alternative acts are conceptually distinct from each other and there has been supporting evidence on each act. *State* v. *Delgado,* 19 Conn. App. 245, 247–48, 562 A.2d 539 (1989); see also *State* v. *Belton,* 190 Conn. 496, 504, 461 A.2d 973 (1983). Our resolution of this claim is controlled by our opinion in *State* v. *Delgado,* supra. Here, as in *Delgado,* there is no conceptual difference between entering unlawfully and remaining unlawfully, nor was there any evidence of an initial lawful entry. See *State* v. *Delgado,* supra, 248–49; see also

*State* v. *Belton,* supra (defendant testified he entered lawfully). Consequently, the defendant was not entitled to a unanimity charge, see *State* v. *Delgado,* supra; see also *State* v. *Suggs,* 209 Conn. 733, 762, 553 A.2d 1110 (1989). There is no merit to this claim.

There is no error.

In this opinion the other judges concurred.