STATE OF CONNECTICUT *v.* JAMIE ST. PIERRE
(AC 18428)

O'Connell, C. J., and Lavery and Hennessy, Js.[1]

---

[1] The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued January 13—officially released June 20, 2000

*Louis S. Avitabile*, special public defender, for the appellant (defendant).

*Margaret Gaffney Radionovas*, assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Cynthia Serafini*, assistant state's attorney, for the appellee (state).

*Opinion*

HENNESSY, J. The defendant, Jamie St. Pierre, appeals from the judgment of conviction, rendered after a jury trial, of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4) and larceny in the second degree in violation of General Statutes § 53a-123 (a) (3). On appeal, the defendant claims that the court improperly (1) found that the evidence was sufficient to prove that the defendant threatened the use of what he represented by words or conduct to be a firearm, (2) accepted the jury's verdict of guilty of larceny in the second degree, (3) denied the defendant's post-verdict motion for discovery and examination of evidence by a court-appointed expert and (4) denied the defendant's motion for a new trial on the ground that certain identification evidence should have been excluded as the unreliable product of unnecessarily

suggestive identification procedures. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. At approximately 1:30 a.m. on April 12, 1996, the defendant, wearing a hooded gray sweatshirt with the hood tied tightly around his face, dark pants, a dark jacket and black footwear, entered a convenience store in Watertown. The defendant approached the clerk behind the counter, Christopher Brown, and stated, "This is a holdup." Brown replied, "Are you serious?" The defendant answered, "Yes, I am," and then gestured by raising his hand inside his jacket from beneath the counter to counter level while at all times keeping his hand and wrist covered by his jacket. On the basis of the comments and gestures of the defendant, Brown presumed that the defendant had a weapon. Brown opened the cash register and gave the defendant the money that was inside. The defendant took the money while keeping the one hand in his jacket and then left. The defendant's actions were recorded on the store's surveillance videotapes.

I

The defendant first claims that the court improperly denied his motion for judgment of acquittal because there was insufficient evidence to prove an essential element of robbery in the first degree, namely, that the defendant threatened the use of what he represented by words or conduct to be a firearm. We disagree.

"When reviewing sufficiency of the evidence claims, we impose a two part analysis. First, we construe the evidence in the light most favorable to sustaining the verdict. . . . Second, we determine whether, from that evidence and all the reasonable inferences which it yields, a [trier of fact] could reasonably have concluded that the defendant was guilty beyond a reasonable doubt. . . . *State* v. *Rivera*, 32 Conn. App. 193, 200–

201, 628 A.2d 996, cert. denied, 227 Conn. 920, 632 A.2d 698 (1993). In this process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. *State* v. *Salz*, 226 Conn. 20, 31, 627 A.2d 862 (1993). The jury's function as the trier of fact is to draw all reasonable and logical inferences from the facts as it finds them to exist. *State* v. *Wideman*, 36 Conn. App. 190, 203, 650 A.2d 571 (1994), cert. denied, 232 Conn. 903, 653 A.2d 192 (1995). As a reviewing court, we must decide whether, on the facts established and inferences that could be reasonably drawn from those facts, the jury could reasonably have concluded that the cumulative effect of the evidence established the defendant's guilt beyond a reasonable doubt. *State* v. *Jarrett*, 218 Conn. 766, 770–71, 591 A.2d 1225 (1991)." (Internal quotation marks omitted.) *State* v. *Torrence*, 37 Conn. App. 482, 485, 657 A.2d 654 (1995).

Robbery in the first degree, pursuant to § 53a-134 (a) (4), requires that a person in the course of committing a robbery display or threaten the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm. In the present case, Brown testified that after the defendant made the demand for money, the defendant raised his right arm, which was covered by a jacket, onto the counter while stating that he was serious. Brown then performed a demonstration for the jury as to what movements the defendant had made. When Brown was asked whether he knew what kind of weapon the defendant had, Brown replied, "No, I have no idea what the weapon could have been," but asserted that he thought that the defendant was armed. Officer Tim Gavallas of the Watertown police department, who had gone to the convenience store after Brown reported the robbery, testified that Brown told him that the defendant made movements suggesting he had a gun. Gavallas also dis-

cussed what he saw when he viewed the store surveillance videotape and testified that he saw the defendant put his hand under his shirt and "motion like he had a gun."

In determining whether the defendant threatened to use what he represented by words or conduct to be a firearm, "[t]he test is not whether the defendant actually had a firearm; *State* v. *Arena*, 33 Conn. App. 468, 476, 636 A.2d 398 (1994); but whether he displayed or threatened the use of what he represented by his conduct to be a firearm. General Statutes § 53a-134 (a) (4)." *State* v. *Torrence*, supra, 37 Conn. App. 486.

The defendant claims that the facts in this case fall within the parameters set forth in *State* v. *Aleksiewicz*, 20 Conn. App. 643, 569 A.2d 567 (1990), in which the court found the evidence insufficient to establish that the assailant had threatened the use of a gun. In this case, although Brown testified that the defendant had a weapon, he "had no idea what the weapon could have been." In *Aleksiewicz*, the defendant, holding his hand flat against his abdomen inside his jacket, approached the driver's side of the victim's car and grabbed some of the cash the victim had just withdrawn from a bank's automatic teller machine. In doing so, the defendant said, " 'Give me that money or you're dead.' " Id., 645. There was no testimony by the victim that he knew or believed that the defendant had a firearm. This court concluded that this evidence did "not definitely establish the firearm element of this crime because no gun was shown and no specific indication was given, by either the defendant's words or actions, that he had in his possession or would use specifically a gun to accomplish his threat." Id., 647.

In the present case, however, the defendant announced, "This is a holdup," and raised his right arm which remained hidden in his jacket from beneath the

counter to counter level, while stating that he was serious about holding up the store. On the basis of that motion, Brown testified that he presumed that the defendant was holding a weapon under his jacket and that he was armed. We conclude that the defendant's words and the upward motion of his arm in his jacket, "under the circumstances as they existed, may properly have been considered factors consistent with the representation and threatened use of a firearm." *State* v. *Torrence,* supra, 37 Conn. App. 486. Accordingly, we conclude that the court properly denied the defendant's motion for judgment of acquittal as to the offense of robbery in the first degree because the jury reasonably could have concluded that the cumulative effect of the evidence established the defendant's guilt beyond a reasonable doubt.

## II

The defendant next claims that the court improperly accepted the jury's verdict of guilty on the offense of larceny in the second degree. Specifically, the defendant contends that when the jury evidenced some confusion concerning its understanding of the degrees of larceny, the court improperly failed to give the jury additional instructions, and rather, invited the jury to return to the jury room to resume deliberations on the larceny count. When the jury returned, it found the defendant guilty of larceny in the second degree as charged. The defendant moved for a mistrial on the ground that the jury was confused and did not know what it was doing. The court denied the motion.

"The decision as to whether to grant a motion for a mistrial . . . is one that requires the trial court to exercise its judicial discretion. . . . Our review of the trial court's exercise of its discretion is limited to questions of whether the court correctly applied the law and could reasonably have concluded as it did. . . . Every rea-

sonable presumption will be given in favor of the trial court's ruling. . . . It is only when an abuse of discretion is manifest or where an injustice appears to have been done that a reversal will result from the trial court's exercise of discretion." (Citations omitted.) *State* v. *Lucci*, 25 Conn. App. 334, 341–42, 595 A.2d 361, cert. denied, 220 Conn. 913, 597 A.2d 336 (1991).

In addition to giving instructions on robbery in the first degree and larceny in the second degree, the court charged the jury on the lesser included offenses of robbery in the third degree and larceny in the sixth degree. During deliberations, the jury requested "a detailed explanation of the charges of count one and count two and . . . an explanation of the lesser degrees." The charge on count one and the lesser included offenses was then read back to the jury. Subsequently, the jury indicated that it had reached a verdict of guilty of robbery in the first degree and larceny in the second degree. The court stated, "I'll accept the [verdict] and order that it be recorded." The court then asked the jurors to "listen to your verdict as accepted and recorded." The clerk then repeated the verdict to the jury[2] and asked, "So say you, Mr. Foreperson, so say you all?" The foreperson replied, "You lost me a little bit on it." The court then asked the foreperson if he had a question. The foreperson stated, "She confused me of the way she worded that entire thing." The court responded, "All right. Let's go back over it again, so that we have it clear. . . . Please do it from the beginning." The clerk again asked the jurors whether they

---

[2] The clerk stated, "Ladies and gentlemen of the jury, listen to your verdict as accepted and recorded. As to the first count of the information charging the defendant with the crime of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4), you say the defendant is guilty. As to the second count of the information, the defendant is charged with the crime of larceny in the second degree in violation of General Statutes § 53a-123 (a) (3), you say the defendant is guilty. So say you, Mr. Foreperson, so say you all?"

had agreed on a verdict, and the foreman replied, "Yes." The clerk inquired as to whether the jury had found the defendant guilty or not guilty of robbery in the first degree, and the foreman indicated, "Guilty." The clerk then asked whether the jury had found the defendant guilty or not guilty of larceny in the second degree. The foreman responded, "The defendant is guilty, we found him, of the sixth degree." The court then repeated the question of whether the defendant was guilty or not guilty of larceny in the second degree, to which the foreman responded, "Our verdict is guilty. I think the jury misunderstood as to the degrees. I think we need further explanation on that." The court then declined to accept the jury's verdict as to the second count.

After the court polled the jurors individually as to the first count, it accepted the verdict and ordered that it be recorded. The court then stated, "As to the second count, in view of your remarks, Mr. Foreperson, I decline to accept the verdict. I'll invite you to return to the jury room and resume your deliberations with regard to count two. In accordance with all of my instructions." The jury returned shortly thereafter with a verdict of guilty on the second count. The court individually polled each juror as to the verdict and accepted the verdict.

"The duty of the trial court [in a criminal case] is to instruct the jury on the law applicable to the case. General Statutes § 54-89; Practice Book § 855 [now § 42-20]. It is the duty of the court, in charging the jury in a criminal case, to give to them such instructions as may be required to enable them to understand the nature of the offense charged and the questions which they are to decide, to weigh the evidence applicable to such questions, and to intelligently decide them." (Internal quotation marks omitted.) *State* v. *Fletcher*, 10 Conn. App. 697, 698–99, 525 A.2d 535 (1987), aff'd, 207 Conn. 191, 540 A.2d 370 (1988). "The defendant is entitled to

a jury which is 'correctly and adequately instructed.' *State* v. *Hines*, 187 Conn. 199, 206, 445 A.2d 314 (1982)." *State* v. *Fletcher*, supra, 701.

Practice Book § 42-27 provides: "If the jury, after retiring for deliberations, request additional instructions, the judicial authority, after providing notice to the parties and an opportunity for suggestions by counsel, shall recall the jury to the courtroom and give additional instructions necessary to respond properly to the request or to direct the jury's attention to a portion of the original instructions." Our Supreme Court has recognized that "[c]larification of the instructions when the jury or one of its members manifests confusion about the law is mandatory." (Internal quotation marks omitted.) *State* v. *Fletcher*, 207 Conn. 191, 193, 540 A.2d 370 (1988).

The state contends that while the foreperson's remarks arguably could have been treated as a request for additional instructions that would have required the court to provide such instructions, the court was within its discretion in directing the jury to retire for further deliberations because of a failure to reach a unanimous verdict. See General Statutes § 52-223; Practice Book § 42-31. We agree with the state. "When there is uncertainty as to the actual intent of the jury, the power of the court in a criminal case to return them to their room to render a clear and unambiguous verdict is, in this country, recognized as indispensable to an orderly and impartial administration of justice." *State* v. *Searles*, 113 Conn. 247, 255, 155 A. 213 (1931). Moreover, there was no specific request by the jury for additional instructions on the larceny count. There also was no evidence that the jury was confused as to the subsequent guilty verdict on the charge of larceny in the second degree; the jurors were individually polled on the verdict and evinced no confusion.

In light of our limited standard of review of whether the court could reasonably have concluded as it did, we conclude that there has been no abuse of discretion by the court in sending the jury back for further deliberations in accordance with all of its instructions. The court properly accepted the jury's verdict of guilty on the charge of larceny in the second degree.

### III

The defendant next argues that the court improperly denied his postverdict motion for discovery and examination of evidence by a court-appointed expert. Specifically, the defendant moved that the court order the state to determine whether photographic or computer enhancement or other expert examination of the store surveillance tapes that recorded the act of robbery could produce relevant evidence as to his innocence. The defendant claims that the state's failure to conduct such testing constitutes withholding exculpatory information in violation of *Brady* v. *Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). We disagree.

In dealing with such posttrial discovery motions, our Supreme Court has stated that "[i]n assessing the legal consequences of possible *Brady* violations, a court appropriately considers the probable effects of the nondisclosure on the result of the trial. The state's failure to disclose exculpatory information will require a new trial only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *State* v. *Shannon*, 212 Conn. 387, 399, 563 A.2d 646, cert. denied, 493 U.S. 980, 110 S. Ct. 510, 107 L. Ed. 2d 512 (1989), quoting *United States* v. *Bagley*, [473 U.S. 667, 682, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985)]. There is a difficulty inherent in measuring the effect of nondisclosure in the course of

a lengthy trial with many witnesses and exhibits . . . this lack of certitude suggests deference by a reviewing court especially in the weighing of evidence. [*State* v. *Pollitt*, 205 Conn. 132, 149, 531 A.2d 125 (1987)] . . . . Thus, the trial court's decision regarding the defendant's petition for a new trial as a result of a *Brady* violation will be overturned only upon a finding of clear abuse of discretion. *Demers* v. *State*, [209 Conn. 143, 148, 547 A.2d 28 (1988)] . . . . *State* v. *Shannon*, supra, 400." (Internal quotation marks omitted.) *State* v. *Hammond*, 221 Conn. 264, 293–94, 604 A.2d 793 (1992).

The defendant cites *State* v. *Hammond*, supra, 221 Conn. 295 n.13, for the proposition that the trial court has the authority to grant a postverdict motion for discovery in the interest of justice. The defendant argues that the failure of both the state and the defense to have the videotapes enlarged prior to the verdict should not be used as a bar to determining whether relevant exculpatory evidence is contained on those tapes. Rather, the defendant, quoting *Hammond*, argues that the state has a duty to "to ensure that all evidence tending to aid in the ascertaining of the truth be laid before the court, whether it be consistent with the contention of the prosecution that the accused is guilty." (Internal quotation marks omitted.) Id., 292.

In *Hammond*, the trial court denied a postverdict motion for DNA profiling and blood testing of vaginal swabs and smears that were taken from a sexual assault victim on the grounds that the results would be cumulative because there already had been extensive tests performed of samples taken from the victim's clothing. The Supreme Court remanded the case to the trial court for a determination of whether the posttrial discovery request as to the vaginal swabs of the victim should be granted in light of the Supreme Court's determinations on appeal. Id., 295. The state had argued that the defendant made a tactical choice not to have the samples

tested prior to the verdict. Our Supreme Court stated that "[t]his argument presupposes that it reasonably appeared during the trial that the samples were testable, and raises the inference that the state also made a tactical choice not to have the samples tested prior to the verdict. Such a tactical choice would plainly have been a breach of the prosecutor's ethical duty to pursue relevant evidence even if it may be exculpatory." Id., 291–92.

In the present case, however, the videotapes were made available to the defendant before trial, were introduced into evidence and were examined by the jury. The court found that the state had disclosed all *Brady* material. Moreover, the court was not convinced that the jury would gain any additional knowledge from the testing of the videotapes. Unlike in *Hammond,* we are not presented with a case where a defendant requested discovery of evidence that would make his guilt physically impossible.

Brown was in a face-to-face situation with the perpetrator, identified him from a photograph shown to him by the police and described the clothing worn by the perpetrator, which matched clothing later found by the police at the defendant's home. The need, after the jury has rendered its verdict, for an enhancement of the store surveillance tapes or for an expert to examine them has not been demonstrated. Because the state disclosed all *Brady* material, because the defendant had the tapes available to him and could have conducted the requested testing prior to the trial, and because the jury viewed the tapes and determined their weight toward showing guilt or innocence, we conclude that the court did not abuse its discretion in denying the defendant's posttrial motion for discovery.

IV

The defendant finally claims that the court improperly denied his motion for a new trial on the ground

that certain identification evidence should have been excluded as the unreliable product of unnecessarily suggestive identification procedures. The court found that the two procedures used in the identifications by Brown were unnecessarily suggestive. The court found, however, on the basis of the totality of the circumstances that the identifications nevertheless were reliable. See *Manson* v. *Brathwaite*, 432 U.S. 98, 114, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977); *State* v. *Ramsundar*, 204 Conn. 4, 10–11, 526 A.2d 1311, cert. denied, 484 U.S. 955, 108 S. Ct. 348, 98 L. Ed. 2d 374 (1987).

In his brief, the defendant claims that the identification procedures were unnecessarily suggestive. He makes no argument, however, as to the court's finding that the procedures were nonetheless reliable. In light of the fact that the defendant has inadequately briefed his claim, we decline to afford appellate review. "We are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Citation omitted; internal quotation marks omitted.) *State* v. *Henderson*, 47 Conn. App. 542, 558, 706 A.2d 480, cert. denied, 244 Conn. 908, 713 A.2d 829 (1998).

The judgment is affirmed.

In this opinion the other judges concurred.