STATE OF CONNECTICUT *v.* ALBERT LOPEZ
(AC 26126)

STATE OF CONNECTICUT *v.* CLIFTON E. KENNEDY
(AC 26216)

Lavery, C. J., and Dranginis and Stoughton, Js.

258

Argued November 15, 2005—officially released January 24, 2006

*Lisa J. Steele*, special public defender, for the appellant (defendant in the first case).

*Mary Anne Royle*, special public defender, for the appellant (defendant in the second case).

*Susann E. Gill*, senior assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Margaret E. Kelley*, senior assistant state's attorney, for the appellee (state).

*Opinion*

DRANGINIS, J. These appeals concern claims raised by the defendants, Clifton E. Kennedy and Albert Lopez, who were codefendants at trial. The jury found each defendant guilty of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4), unlawful restraint in the second degree in violation of General Statutes § 53a-96 (a), and larceny in the sixth degree in violation of General Statutes §§ 53a-119 and 53a-125b (a). On appeal, Kennedy claims that (1) there was insufficient evidence to support his conviction of robbery in the first degree and (2) the trial court improperly denied his motion for a mistrial. Lopez claims that (1) there was insufficient evidence to support his conviction of robbery in the first degree and unlawful restraint in the second degree, (2) his conviction of robbery in the first degree and unlawful restraint in the second degree violates the constitutional prohibition against double jeopardy and (3) the court improperly denied

his motion for mistrial. We affirm the judgments of the trial court.

The jury reasonably could have found the following facts. At approximately 10 p.m. on December 9, 2003, the victim, Cecile Lawrence, a University of Bridgeport security officer, was walking to her place of employment via Park Avenue. The weather was cold, and the victim wore a winter coat over her uniform. As she crossed Atlantic Street, she heard someone approaching from behind. She turned and saw two men, whom she subsequently identified as Kennedy and Lopez. Kennedy ordered the victim to give him her money or he would "do [her]." The victim described Kennedy as being very upset. He repeatedly threatened her by stating, "[G]ive me your money or I'll do you right here." The victim told Kennedy that she had no money, but he persisted, stating that he knew that she had money. The victim was afraid that she would be shot. She perceived an odor of alcohol on Kennedy and Lopez and believed that both men had been drinking.

The victim was wearing a backpack. Kennedy pulled on the backpack forcing the shoulder straps to draw the victim's arms behind her. This permitted Lopez to unzip the victim's coat, rummage through her outer and inner coat pockets and the pocket of her shirt. Lopez removed the victim's keys, reading glasses and identification. Kennedy continued to threaten the victim by stating that he would "do [her]" then if she did not give them her money. Lopez informed him, however, that the victim did not have any money and told Kennedy not to "do her." Kennedy and Lopez took the victim's backpack with its contents and told the victim to walk away and not to look back. As the victim walked away, Kennedy again threatened her, stating, "Do not turn around or I'll do you."

The victim walked to the campus security office, which was about one and one-half blocks away. She

met her supervisor, Jermaine Alston, who was operating a campus security vehicle, and informed him that she had been mugged. Alston told the victim to get into the vehicle, and they drove around the area looking for the perpetrators of the robbery. The victim described the perpetrators as a black man and a Hispanic man. Alston and the victim saw two men going through a backpack on Atlantic Street. The victim recognized them as the men who had robbed her. Alston stopped the vehicle and got out. Kennedy ran away. Lopez began to walk away, refusing to answer Alston's question about where he had gotten the backpack. Alston scuffled with Lopez and subdued him until the police arrived and took Lopez into custody. Kennedy was apprehended by the police a few blocks from the scene.

Most of the victim's belongings were recovered, except her cellular telephone, which was valued at approximately $200. After Kennedy and Lopez were taken into custody, the victim identified them as the men who had robbed her. She also identified them in court. Alston identified Lopez in court, as well, but he could not identify Kennedy.

Both defendants were charged with robbery in the first degree, unlawful restraint in the second degree and larceny in the sixth degree. Their cases were consolidated for trial on June 16, 2004. The jury returned verdicts of guilty on October 6, 2004. Each of the defendants received a total effective sentence of eleven years in the custody of the commissioner of correction and three years of probation. These appeals followed.

I

Kennedy and Lopez both claim that there was insufficient evidence to support the jury's respective verdicts of guilty of robbery in the first degree in violation of § 53a-134 (a) (4). Lopez also claims that there was insufficient evidence to support the jury's verdict of guilty

of unlawful restraint in the second degree as an accessory. We do not agree with these claims.

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict." (Internal quotation marks omitted.) *State* v. *Colon*, 272 Conn. 106, 270, 864 A.2d 666 (2004), cert. denied, 546 U.S. 848, 126 S. Ct. 102, 163 L. Ed. 2d 116 (2005). "In conducting our review, we are mindful that the finding of facts, the gauging of witness credibility and the choosing among competing inferences are functions within the exclusive province of the jury, and, therefore, we must afford those determinations great deference." *State* v. *Conde*, 67 Conn. App. 474, 490, 787 A.2d 571 (2001), cert. denied, 259 Conn. 927, 793 A.2d 251 (2002).

"[P]roof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the trier, would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty. . . . Furthermore, [i]n [our] process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact,

but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence." (Citation omitted; internal quotation marks omitted.) *State* v. *Merriam*, 264 Conn. 617, 629, 835 A.2d 895 (2003).

"While . . . every element [must be] proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense[s], each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . [I]n determining whether the evidence supports a particular inference, we ask whether that inference is so unreasonable as to be unjustifiable. . . . [A]n inference need not be compelled by the evidence; rather the evidence need only be reasonably susceptible of such an inference." (Citation omitted; internal quotation marks omitted.) *State* v. *Glasper*, 81 Conn. App. 367, 371, 840 A.2d 48, cert. denied, 268 Conn. 913, 845 A.2d 415 (2004).

A

Both Kennedy and Lopez claim that there was insufficient evidence to support their convictions of robbery in the first degree in violation of § 53a-134 (a) (4)[1] because the jury reasonably could not have concluded that Kennedy represented by his words or conduct the threatened use of a firearm. More specifically, Kennedy and Lopez argue that the jury's verdicts were based on speculation and surmise because the meaning of the words "do you" is too vague to be construed as a threat to shoot the victim, particularly when there was no evidence that either of the defendants had a firearm.[2]

[1] General Statutes § 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime . . . (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm . . . ."

[2] The police did not recover a firearm.

Kennedy and Lopez contend, therefore, that the state failed to prove beyond a reasonable doubt the firearm element of the statute. We are not convinced.

The state charged, in the respective amended informations, that "at the City of Bridgeport . . . on or about the 9th day of December, 2003, at approximately 10:35 p.m., at 296 Park Avenue within said City, the said [defendant] stole certain property from one CECILE LAWRENCE, and in the course of the commission of the crime he threatened the use of what he represented by his words or conduct to be a firearm, to wit: a handgun, in violation of Section 53a-134 (a) (4) of the Connecticut General Statutes."

"Pursuant to § 53a-134 (a) (4), a person is guilty of robbery in the first degree when, in the commission of the crime of robbery, that person displays or threatens the use of what he represents by his words or actions to be a pistol, revolver, rifle, shotgun, machine gun or other firearm. This portion of the statute is satisfied when the state has proven beyond a reasonable doubt that the defendant represented by his words or conduct that he has a firearm; *the state need not prove that the defendant actually had a gun.*" (Emphasis added; internal quotation marks omitted.) *State* v. *Hansen*, 39 Conn. App. 384, 401, 666 A.2d 421, cert. denied, 235 Conn. 928, 667 A.2d 554 (1995).

"Robbery occurs when a person, in the course of committing a larceny, uses or threatens the immediate use of physical force upon the victim. General Statutes § 53a-133." *State* v. *Littles*, 31 Conn. App. 47, 54, 623 A.2d 500, cert. denied, 227 Conn. 902, 630 A.2d 72 (1993). "While there is no definition of the word threaten in the statutes, General Statutes § 1-1 (a) provides that the commonly approved usage of the language should control. . . . A threat is 1. an indication of something impending and usually undesirable or unpleasant . . .

2. something that by its very nature or relation to another threatens the welfare of the latter. . . . A threat has also been defined as any menace of such a nature and extent as to unsettle the mind of the person on whom it operates, and to take away from his acts that free and voluntary action alone constitutes consent." (Citations omitted; internal quotation marks omitted.) *State* v. *Littles*, supra, 54, citing *Hadley* v. *State*, 575 So. 2d 145, 156, aff'd, 588 So. 2d 938 (Ala. Crim. App. 1991). "*This definition does not require that a threat be explicitly uttered.* . . . An implied threat is as effective as a stated threat, especially when the apparent ability to carry out the threat is overwhelming." (Emphasis added.) *State* v. *Littles*, supra, 54.

In this case, Kennedy repeatedly told the victim to give him her money or that he would "do [her]." In support of their claim that the meaning of the expression "do you" is vague, Kennedy and Lopez rely on *State* v. *Aleksiewicz*, 20 Conn. App. 643, 569 A.2d 567 (1990). In *Aleksiewicz*, the defendant approached the victim after he had withdrawn $400 from an automatic teller machine. Id., 645. The defendant told the victim to give him his money or " 'you're dead.' " Id. The victim reported to the police that "the defendant was holding his hand inside a 't-shirt' when he demanded the money. At trial, [the victim] testified that the defendant held his hand flat against his abdomen in a 'coat like or jacket.' " Id., 646. This court reversed the conviction, concluding that the victim's testimony had not established definitely the firearm element of the crime because no gun was shown, and the defendant did not give any specific indication, by words or action, that he had a gun. Id., 647. The victim had not testified that the defendant had a weapon, and the trial court would not permit him to testify as to whether he believed that the defendant had a gun. Id., 649. This court found the trial court's view of the evidence to be significant. To

reach its verdict, the jury had to speculate that the defendant had a gun. Id., 650.

The state argues that the facts of *Aleksiewicz* are distinguishable and that the facts here are more consistent with those of *State* v. *St. Pierre*, 58 Conn. App. 284, 288, 752 A.2d 86 (victim testified defendant had weapon, but had no idea what weapon could have been), cert. denied, 254 Conn. 916, 759 A.2d 508 (2000). Here the victim, a security guard, testified that she was scared because she thought that she was going to be shot.[3] Furthermore, after Lopez had ransacked the victim's pockets, he told Kennedy not to "do her" because she had no money. Kennedy then told the victim to walk away and not to look back or he would "do [her]."[4] The state concedes that although Kennedy and Lopez were standing in close proximity to the victim, the term "do you" is susceptible of several meanings. It points out, however, that if Kennedy was going to "do" the victim *from a distance*, as she was walking away, the

---

[3] The victim testified as follows on direct examination:

"[The Prosecutor]: . . . [A]fter the black man told you to give him your money or he'd do you, did he say anything else?

"[The Witness]: Yeah. He was very upset. He was, like . . . I was scared. He was, like, give me your money or I'll do you. Give me your money. I told him I didn't have any money. He says I know you got money. I know you got money. He says give me your money or I'll do you right here. I'll do you right here. And I was scared.

"[The Prosecutor]: What were you scared of?

"[The Witness]: I was scared that he was going to shoot me.

"[The Prosecutor]: Did you see a gun?

"[The Witness]: No, I didn't see a gun."

[4] The victim also testified as follows:

"[The Prosecutor]: . . . Did there come a point in time when you were released?

"[The Witness]: Yes.

"[The Prosecutor]: And would you describe for the jurors how that— what happened at that point in time . . . ?

"[The Witness]: Well, they had [taken] my book bag, and they told me to walk. Walk straight, go straight ahead, don't look back or I'll do you, he says. *Do not turn around or I'll do you.*" (Emphasis added.)

jury reasonably could have inferred that Kennedy had threatened to shoot the victim. We agree that the jury reasonably could have inferred that "to do" the victim from a distance, Kennedy had threatened to shoot her if she turned around while she was walking away from him and Lopez.

"Jurors do not live in a fishbowl. . . . In considering the evidence . . . [j]uries are not required to leave common sense at the courtroom door . . . . A threat need not be explicitly uttered." (Citations omitted; internal quotation marks omitted.) *State* v. *Glasper*, supra, 81 Conn. App. 375. Viewing the evidence in the light most favorable to sustaining the verdicts, we conclude, on the basis of the cumulative evidence presented, including the reasonable inferences to be drawn therefrom, that there was sufficient evidence for the jury to find Kennedy and Lopez guilty of robbery in the first degree in violation of § 53a-134 (a) (4).

B

Lopez also contends that there was insufficient evidence to convict him of unlawful restraint in the second degree in violation of § 53a-96 (a).[5] More particularly, he argues that Kennedy did not intend to restrain the victim when he pulled on the victim's backpack and held back her arms. We do not agree.

The amended information as to Lopez alleged in relevant part that "at the City of Bridgeport . . . on or about the 9th day of December, 2003, at approximately 10:35 p.m., at 296 Park Avenue within said City, the said . . . LOPEZ did restrain another person, in violation of Section 53a-96 (a) of the Connecticut General Statutes." The state argues that the evidence established that Kennedy and Lopez confined the victim at the scene of the

[5] General Statutes § 53a-96 (a) provides: "A person is guilty of unlawful restraint in the second degree when he restrains another person."

robbery without her consent. The state also argues that because the jury could have found Lopez guilty as an accessory, it offered evidence that Lopez acted with the mental state required for the commission of the offense by intentionally assisting Kennedy to engage in the conduct that constitutes the offense. See General Statutes § 53a-8.

As we determined in part I A, there was sufficient evidence to support Lopez' conviction of robbery in the first degree as a result of the threatened use of a firearm. " 'Restrain' means to restrict a person's movements intentionally and unlawfully in such a manner as to interfere substantially with his liberty by moving him from one place to another, or by confining him either in the place where the restriction commences or in a place to which he has been moved, without consent. As used herein 'without consent' means, but is not limited to, (A) deception and (B) any means whatever . . . ." General Statutes § 53a-91 (1). A threat is sufficient to interfere substantially with a person's liberty. See *State* v. *Drake*, 19 Conn. App. 396, 401, 562 A.2d 1130 (1989).

In *Drake*, "[t]here was sufficient evidence for a reasonable jury to conclude that the defendant had confined the victim in her home without her consent. The defendant confronted the victim in her bedroom at 3 a.m. He told her to put down the [tele]phone she was holding. He was larger than the victim and appeared to be almost desperate. He told the victim that he was on probation or parole and that he was running from the police because he could be sent back to jail. The defendant also told the victim that police with dogs were surrounding the house and that he would be shot. The victim testified that she felt terrorized and did not flee from the house because she was afraid the defendant would chase after her. This was sufficient evidence that the defendant's acts substantially interfered with

the victim's liberty." (Internal quotation marks omitted.) Id., 400–401.

In this case, too, there is sufficient evidence that Kennedy's threats and Lopez' opening of the victim's winter coat, ransacking her pockets and taking her keys and reading glasses caused the victim to fear for her life and overbore her free will to leave the scene. Furthermore, Lopez' argument that he could not be guilty of unlawfully restraining the victim because Kennedy was the person who took hold of the victim's backpack overlooks the active role Lopez had in searching the victim's person for money. As we noted, the jury does not leave its common sense at the courthouse door. The victim was approached by two men, one of whom threatened to "do [her]" if she did not give them her money. While Kennedy held the victim's backpack, Lopez took advantage of her immobility to search her pockets. The jury reasonably could have inferred from the facts in evidence that Kennedy and Lopez intentionally acted in concert to restrain the victim in order to rob her of her money. We conclude, therefore, looking at the evidence in the light most favorable to sustaining the verdicts, that there was sufficient evidence from which the jury could find Lopez guilty beyond a reasonable doubt of unlawful restraint in the second degree.

## II

Kennedy and Lopez next claim that the court abused its discretion when it denied their motions for a mistrial. More specifically, they claim that their constitutional right to the presumption of innocence was denied by a suggestive pretrial identification procedure. We decline to review their claims for want of an adequate record.

The following additional facts are relevant to the defendants' claims. Kennedy and Lopez contend that the primary issue at trial was the identification of the

perpetrators of the robbery. On the day evidence commenced, marshals escorted Kennedy into the courtroom via a side door. Lopez apparently was escorted by marshals through public spaces, where he passed by the victim and other identification witnesses. Immediately after the court came onto the bench, counsel for Lopez made an oral motion for a mistrial that was joined by Kennedy's counsel.[6] The court denied the motions, stating: "Well, it's going to be obvious to anyone who's a witness in this case that the two persons seated at the counsel table are the defendants. The motion is denied."

---

[6] The transcript reveals the following argument:

"[Defense Counsel for Lopez]: The defense on behalf of Mr. Lopez has a request for a mistrial for the following reasons, Your Honor. My client, Mr. Lopez, was taken off the fifth floor elevator just a few minutes ago . . . in handcuffs and foot shackles. And he was marched down the hall to the courtroom. All the police officer witnesses in this case, the victim, a security guard, all were going to be witnesses who are part of the process of identification, because this is an identification case with regard to Mr. Lopez as being one of the two perpetrators alleged by the victim to have robbed her, the way they saw my client and they saw him brought into the courtroom under sheriff's escort. . . . [T]he other defendant, Mr. Kennedy, was brought in through this particular door here, which does not enter into the hallway. It leads directly down into the cell block eventually. . . .

"And I don't know why my client was chosen to be brought out of the elevator that was—and down a crowded hallway into this courtroom, but I would object since it is an [identification] case. . . . All the . . . witnesses were outside for the state, five police officers, the victim, her boss from the University of Bridgeport, and I don't know who else, if any. But the defense would ask for a mistrial, Your Honor. . . . It's extremely prejudicial to him to be seen prior to evidence by all these witnesses in that position. In fact, if they saw him from the witness stand, they would not see him in either handcuffs or shackles because the handcuffs would be removed by the time they came in and his feet would have been under the defense table, and they wouldn't have noticed. So, for those reasons, Your Honor, due to the extreme prejudice my client has suffered, the defense on behalf of Mr. Lopez would ask for a mistrial. . . .

"[Defense Counsel for Kennedy]: Your Honor, might I just be heard for a moment on the same issue? Your Honor, I would also like to join in [the] motion for a mistrial because identification is critical in this case, and it's a very, in my opinion anyway, a weak identification case. However, Mr. Kennedy was found with Mr. Lopez at the time of the arrest. So, any prejudice

The state argues that the claim is not reviewable because the record is inadequate. The state points out that there is no record of which, if any, of the witnesses saw Lopez in handcuffs and shackles and, if so, the effect the sight had on them or their ability to identify either Kennedy or Lopez. Counsel for Lopez noted that the hallway was crowded. The defendants did not question the witnesses as to whether they saw Lopez being brought into the courtroom. Neither Kennedy nor Lopez objected to the in-court identifications or moved to suppress them. We agree with the state that Kennedy and Lopez have failed to provide not only a record that the witnesses' seeing Lopez in restraints prejudiced their identification of him or Kennedy, but also a record of whether the witnesses actually saw Lopez in the hallway. Kennedy and Lopez have failed to develop a factual record at trial to permit this court to review the identification procedure for constitutional infirmity. See *State* v. *Daniels*, 248 Conn. 64, 80–81, 726 A.2d 520 (1999), overruled in part on other grounds, *State* v. *Singleton*, 274 Conn. 426, 438, 876 A.2d 1 (2005). We therefore decline to review the defendants' claims, as it was their responsibility to provide an adequate record for review on appeal. See Practice Book §§ 60-5, 61-10.

III

Lopez also claims that his conviction of robbery in the first degree and unlawful restraint in the second degree violate both the state and federal constitutional prohibition against double jeopardy.[7] He argues that it is not possible to commit robbery in the first degree without restraining the victim. We are not convinced.

to Mr. Lopez would, by circumstances and inference, be prejudice to Mr. Kennedy. So, I would like to join in the motion, Your Honor."

[7] Lopez failed to raise this claim at trial and seeks to prevail in this court pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). We review the claim because double jeopardy is a claim of constitutional magnitude. Lopez cannot prevail, however, because the constitutional violation clearly did not exist, and he clearly was not deprived of a fair trial.

"Traditionally we have applied the *Blockburger* [v. *United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932)] test to determine whether two statutes criminalize the same offense, thus placing a defendant prosecuted under both statutes in double jeopardy: [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. . . . This test is a technical one and examines only the statutes, charging instruments, and bill of particulars as opposed to the evidence presented at trial. . . .

"The *Blockburger* test is a rule of statutory construction, and because it serves as a means of discerning [legislative] purpose the rule should not be controlling where, for example, there is a clear indication of contrary legislative intent. . . . Consistent with our well established jurisprudence on statutory construction, we begin with the language of the statute. . . . We are also mindful of well established principles that govern the construction of penal statutes. Courts must avoid imposing criminal liability where the legislature has not *expressly* so intended. . . . Accordingly, [c]riminal statutes are not to be read more broadly than their language plainly requires and ambiguities are ordinarily to be resolved in favor of the defendant. . . . The legislature bars multiple punishments expressly when it does not intend such punishment. . . . Statutory construction is a matter of law over which we exercise plenary review." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Browne*, 84 Conn. App. 351, 368–69, 854 A.2d 13, cert. denied, 271 Conn. 931, 859 A.2d 930 (2004).

We set forth the language of the counts of robbery in the first degree and unlawful restraint in the second degree that were alleged against Lopez in part I, as well

as the language of the statutes under which the crimes were alleged. See footnotes 1 and 5. The state concedes, and we agree, that the crimes alleged in the first and second counts of the amended information as to Lopez arose out of a single transaction. We conclude, however, that the allegations of the subject amended information and the statutes under which the crimes were charged each contain an element the other does not. Count one alleged that Lopez stole property from the victim and threatened the use of a firearm. Count two alleged that Lopez restrained another person. General Statutes § 53-134 (a) (4) contains elements that § 53a-96 does not, namely, "displays or threatens the use of what he represents by his words and conduct to be a . . . firearm . . . ." General Statutes § 53a-96 (a) contains an element that § 53-134 (a) (4) does not, to wit, "restrains another person."

Lopez has not identified any construction of the statutes at issue that would support a conclusion that the prohibited acts are not separate offenses or that the General Assembly did not intend to punish both prohibited acts simultaneously. Instead, Lopez has grounded his claim in the evidence, which is an impermissible test for double jeopardy analysis. See *State* v. *Kirsch*, 263 Conn. 390, 421, 820 A.2d 236 (2003); see also *State* v. *Nixon*, 231 Conn. 545, 550–51, 651 A.2d 1264 (1995); *State* v. *Lonergan*, 213 Conn. 74, 79, 566 A.2d 677 (1989), cert. denied, 496 U.S. 905, 110 S. Ct. 2586, 110 L. Ed. 2d 267 (1990). He posits that it is not possible for one to commit robbery without restraining the victim, e.g., the larceny cannot be completed unless the victim is prevented from walking away. The state's response points out that Lopez' argument is grounded in the evidence. The state also provides an example of robbery in the first degree that demonstrates that the crime can be completed without restraining a victim, to wit, a robber's threat of force could cause a victim to drop

his property and flee. We can envision other scenarios under which robbery in the first degree is carried out by the threat of the use of a firearm during which the victim is not restrained. See General Statutes § 53a-133.[8] For these reasons, Lopez' double jeopardy claim fails.

The judgments are affirmed.

In this opinion STOUGHTON, J., concurred.

LAVERY, C. J., dissenting in part. I concur with parts I B, II and III of the majority opinion, affirming the judgments of the trial court. Because, in my view, the present case is indistinguishable from this court's decision in *State* v. *Aleksiewicz*, 20 Conn. App. 643, 569 A.2d 567 (1990), I respectfully dissent from the conclusion in part I A that the evidence was sufficient to find the defendants, Clifton E. Kennedy and Albert Lopez, guilty of robbery in the first degree.

To be guilty of robbery in the first degree under General Statutes § 53a-134 (a) (4), a defendant must either display or threaten the use of what he represents by his words or conduct to be a firearm.[1] As that requirement is an objective one; *State* v. *Aleksiewicz*, supra, 20 Conn. App. 648; this court's focus properly is on the representation made by the defendants, rather than the victim's perception thereof.

I believe the present case falls squarely within this court's holding in *Aleksiewicz*. In that case, we

---

[8] General Statutes § 53a-133 provides in relevant part: "A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of . . . (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny." Example: A telephones B and tells B to drop her money out the window of her home or A will break down the door and shoot B.

[1] At trial, the victim testified that she never saw a firearm.

observed that "[t]he only evidence . . . that the defendant threatened the use of what he represented by word or conduct to be a firearm was the testimony of one of the victims that the assailant held one hand flat against his body, inside his shirt, vest or jacket, and that he said, 'Give me that money or you're dead.' This testimony does not definitely establish the firearm element of this crime because no gun was shown and no specific indication was given, by either the defendant's words or actions, that he had in his possession or would use *specifically a gun* to accomplish his threat." (Emphasis in original.) Id., 647. In the present case, the only evidence the defendants threatened the use of what was represented by word or conduct to be a firearm was the testimony of the victim that Kennedy ordered her to "give me your money or I'll do you," and, "Do not turn around or I'll do you." That testimony is likewise deficient to establish the firearm element.

The majority reasons that the present factual scenario more closely resembles *State* v. *St. Pierre*, 58 Conn. App. 284, 752 A.2d 86, cert. denied, 254 Conn. 916, 759 A.2d 508 (2000). I disagree. In *St. Pierre*, the defendant announced that " '[t]his is a holdup' " and then "gestured by raising his hand inside his jacket from beneath the counter to counter level while at all times keeping his hand and wrist covered by his jacket." Id., 286. At trial, the victim testified that he presumed that the defendant was holding a weapon under his jacket *due to that gesture*. Id., 289. We therefore concluded that the combination of "the defendant's words and the upward motion of his arm in his jacket . . . may properly have been considered . . . consistent with the representation and threatened use of a firearm." (Internal quotation marks omitted.) Id.

*Aleksiewicz*, however, involved no such gesture. Indeed, we specifically distinguished two New York decisions relied on by the state by explaining that the

case involved no testimony that the defendant either (1) held his hand in his pocket in a manner meant to convey the impression that he had a gun or (2) placed his hand inside his vest as if he had a gun. *State* v. *Aleksiewicz*, supra, 20 Conn. App. 649. No such testimony was provided in the present case. Consequently, *St. Pierre* is inapposite.

In *Aleksiewicz*, the defendant stated, " 'Give me that money or you're dead.' " Id., 647. That statement was accompanied by no gesture indicating that the defendant possessed a firearm. In the present case, Kennedy stated, "[G]ive me your money or I'll do you," and, "Do not turn around or I'll do you." He made no gesture indicating that he possessed a firearm. Accordingly, I would conclude that insufficient evidence was presented on a necessary element of the crime of robbery in the first degree. Because on the facts of this case, the jury necessarily would have found the defendants guilty of the lesser charge of robbery in the third degree in violation of General Statutes § 53a-136, had it considered that charge; see *State* v. *Nicholson*, 71 Conn. App. 585, 592, 803 A.2d 391, cert. denied, 261 Conn. 941, 808 A.2d 1134 (2002), cert. denied, 543 U.S. 1162, 125 S. Ct. 1327, 161 L. Ed. 2d 134 (2005); I would remand the case with direction to render judgments of conviction of robbery in the third degree as to each defendant.